2008-NMCA-068

185 P.3d 1085

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Rafael ALMEIDA, Defendant–Appellant.**

**No. 26,567.**

Court of Appeals of New Mexico.

March 28, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant appeals his convictions for possession of methamphetamine, contrary to NMSA 1978, § 30–31–23(D) (1990) (amended 2005), and for possession of drug paraphernalia, contrary to NMSA 1978, § 30–31–25.1 (2001). He argues that his two convictions violate double jeopardy. We agree, reverse the trial court, and remand with instruction to vacate the paraphernalia conviction.

## I. BACKGROUND

{2} On February 7, 2005, Defendant was arrested for violating the terms of his parole. The pertinent facts follow. While patting down Defendant's legs, the booking officer at the San Juan County Detention Center saw a baggie on the floor. The baggie was located approximately three inches from Defendant's foot and appeared to contain contraband. The Farmington Police Department sent the baggie to be tested at the crime lab, where the substance in the baggie was identified as methamphetamine.

{3} Defendant was charged with and was ultimately convicted of one count of possession of a controlled substance, based on the methamphetamine, and one count of possession of paraphernalia, based on the baggie that held the methamphetamine. He now appeals those convictions to this Court.

## II. DISCUSSION

{4} Defendant contends that his convictions for possession of a controlled substance and possession of drug paraphernalia violate double jeopardy because the legislature did not intend to include a separate paraphernalia charge for the baggie that holds a personal drug supply. We review double jeopardy claims de novo. *See State v. Bernal,* 2006–NMSC–050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

{5} "The New Mexico and United States Constitutions each contain a prohibition that no person be twice put in jeopardy for the same offense." *State v. Armendariz,* 2006–NMSC–036, ¶ 19, 140 N.M. 182, 141 P.3d 526 (internal quotation marks and citations omitted). We engage in double jeopardy analysis in three circumstances: (1) to protect against a second prosecution for the same offense after acquittal, (2) to protect against a second prosecution for the same offense after conviction, and (3) to protect against multiple punishments for the same offense. *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Defendant argues that his convictions amount to multiple punishments for the same offense. "Multiple punishment problems can arise from both double-description claims, in which a single act results in multiple charges under different criminal statutes, and unit-of-prosecution claims, in which an individual is convicted of multiple violations of the same criminal statute." *Bernal,* 2006–NMSC–050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted). In the present

case, Defendant makes a double-description claim because he contends that he , was charged under two different statutes for a single act, the possession of methamphetamine.

▮ {6} To analyze double-description claims, we rely on the two-part test explained in *Swafford.* *Bernal,* 2006–NMSC–050, ¶ 9, 140 N.M. 644, 146 P.3d 289. "The first part of our inquiry asks ... whether the conduct underlying the offenses is unitary, ... [and t]he second part focuses on ... whether the legislature intended to create separately punishable offenses." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

### A. Unitary Conduct

{7} In the present case, the State concedes that Defendant's conduct was unitary, and we agree. Consequently, we turn to the second factor in the *Swafford* analysis and consider whether the legislature intended to create separately punishable offenses for the same conduct. *See id.* at 14, 810 P.2d at 1234 ("If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry.")

### B. Legislative Intent—Elements of Crimes

▮ {8} Defendant was charged with two crimes under two separate statutes: Section 30–31–25.1(A) (making it illegal to use or possess with intent to use drug paraphernalia) and Section 30–31–23(D) (making it illegal to possess methamphetamine). Neither statute provides a clear expression of whether the legislature intended to create separately punishable offenses.

▮ {9} When a clear expression of legislative intent is absent, *Swafford* directs the application of the test enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in order to ascertain the legislature's intent. *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. "If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy

purposes—punishment cannot be had for both." *Id.* As per the *Blockburger* test, we first consider the elements of both statutes; "if each statute requires an element of proof not required by the other, we presume that the [l]egislature intended to punish the offenses separately." *Armendariz,* 2006–NMSC–036, ¶ 22, 140 N.M. 182, 141 P.3d 526.

{10} In order to convict Defendant for violating Section 30–31–25.1, possession of drug paraphernalia, the State must establish that he (1) used or possessed with intent to use the drug paraphernalia (2) to, among other things, store, contain, or conceal a controlled substance. *See* § 30–31–25.1(A). Possession of a controlled substance requires the State to prove that Defendant intentionally possessed a controlled substance. *See* Section 30–31–23(A). We arrive at the same conclusion as that of the State and Defendant; at oral argument, they agreed that each statute requires an element of proof not required by the other. The State is thus able to raise the presumption that the legislature intended to punish the offenses separately. *See Armendariz,* 2006–NMSC–036, ¶ 22, 140 N.M. 182, 141 P.3d 526.

### C. Other Indicia of Legislative Intent

▮ {11} Our inquiry does not end here, however, because the presumption is not conclusive; it may be overcome by "other indicia of legislative intent, including the language, history, and subject of the statutes, the social evils sought to be addressed by each statute, and the quantum of punishment prescribed by each statute." *Id.* "If those factors reinforce the presumption of distinct, punishable offenses, then there is no violation of double jeopardy." *Id.* We first turn to the language of the pertinent statutes.

### 1. Language in the Statutes

{12} The State relies on the plain language of the statutes and contends that this language "leaves no doubt that the legislature intended separate punishment for both the possession of a controlled substance[ ] and the possession of the container in which controlled substance is ... held until it is ... introduced into the human body." We disagree and begin with a review of the statute

criminalizing the possession of drug paraphernalia, Section 30–31–25.1, which states the following:

> It is unlawful for a person to use or possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the Controlled Substances Act[.]

Section 30–31–25.1(A). NMSA 1978, § 30–31–2(V) (2002) (amended 2005 and 2006), defines "drug paraphernalia" as

> all equipment, products and materials of any kind that are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance or controlled substance analog in violation of the Controlled Substances Act.

Under Section 30–31–2(V), paraphernalia include a variety of objects. Relevant to our analysis are those described in Section 30–31–2(V)(10): "containers and other objects used, intended for use or designed for use in storing or concealing controlled substances or controlled substance analogs." Section 30–31–2(V)(13)(c) further instructs that we consider "the proximity of the object to controlled substances" in order to determine whether an object is drug paraphernalia. After examining the paraphernalia statute, an initial conclusion is unavoidable: Section 30–31–2(V)(10) contemplates that a baggie holding a quantity of a controlled substance is drug paraphernalia. However, this is not the question before us. Instead, we must determine if the legislature's intent to define the baggie as paraphernalia inevitably leads to the conclusion that the legislature intended for a defendant to be convicted both for possessing a controlled substance and possessing the container in which it is stored.

{13} Indeed, Defendant insists that "the [l]egislature did not intend to turn every conviction for possession of a controlled substance into two crimes whenever the controlled substance was in a baggie." Defendant contends that a reading of the language in Section 30–31–2(V) and Section 30–31–25.1(A) together supports the conclusion that the legislature intended the possession of paraphernalia statute only to punish items that a person intended to use to manufacture, traffic, or ingest a controlled substance. We cannot agree with this reading of the statutes. Section 30–31–2(V)(10) specifies "containers and other objects used, intended for use or designed for use in storing or concealing controlled substances or controlled substance analogs." The statute does not distinguish between containers used to store large quantities for distribution and a container used to store a small personal supply. In order to reach Defendant's conclusion, we would be required to add words to the statute, which we do not do when construing statutes. *See City of Deming v. Deming Firefighters Local 4521*, 2007–NMCA–069, ¶ 20, 141 N.M. 686, 160 P.3d 595. While we agree that much of the definition of paraphernalia is dedicated to describing items that are used to manufacture, traffic, or ingest a controlled substance, Section 30–31–2(V)(10) describes items that are used, intended for use, or designed for use "in storing or concealing controlled substances." Though we believe that Defendant's reading is too narrow, we also observe that the language of the two statutes does not establish, as the State suggests, that the legislature always intended to punish these closely related crimes simultaneously. We continue with our analysis under *Armendariz*, 2006–NMSC–036, ¶ 22, 140 N.M. 182, 141 P.3d 526.

### 2. Societal Interests

{14} The State agrees with Defendant that both statutes address the same societal evil: the dangers of drug abuse. We agree with this assessment; both crimes are part of a comprehensive set of laws designed to protect the public from these dangers. *See State v. Franco*, 2005–NMSC–013, ¶ 18, 137 N.M. 447, 112 P.3d 1104 (stating that the possession of cocaine is governed by a comprehensive scheme of penalties with a goal of protecting the public from the dangers of drug abuse). This factor weighs against al-

lowing the State to punish Defendant for both crimes. *See id.*

### 3. Quantum of Punishment

■ {15} We also look to the quantum of punishment in both statutes in order to determine legislative intent. *Swafford,* 112 N.M. at 15, 810 P.2d at 1235 (stating that "[t]he quantum of punishment ... is probative of legislative intent"). When the quantum of punishment is the same for both statutes, it suggests that the legislature intended separate punishments for each offense. *Franco,* 2005-NMSC-013, ¶ 18, 137 N.M. 447, 112 P.3d 1104. Conversely, when two offenses stand alone, with independent elements, the fact that punishment for one is greater than the other is one point in favor of a determination that the legislature did not intend multiple punishments. *See State v. Fuentes,* 119 N.M. 104, 108–09, 888 P.2d 986, 990–91 (Ct.App.1994) (considering whether "the quantum of punishment authorized for each crime is harmonious with independent punishments" and recognizing that when one crime carries punishment three times greater than the other crime, this factor weighs against multiple punishments).

{16} In the present case, Defendant was convicted of possession of a controlled substance, which is a fourth-degree felony under Section 30–31–23(D). Pursuant to NMSA 1978, § 31–18–15(A)(6) (2003) (amended 2007) (current version at § 31–18–15(A)(10)), the basic punishment for a fourth-degree felony is eighteen months imprisonment. Defendant was also convicted of possession of drug paraphernalia, a misdemeanor under Section 30–31–25.1(C). Under this section, the punishment is a $50 to $100 fine and/or less than one year imprisonment. Although the trial court ran the sentence for the possession of a controlled substance concurrently with the sentence for the possession of drug paraphernalia, this does not affect our analysis. *See State v. Pierce,* 110 N.M. 76, 87, 792 P.2d 408, 419 (1990) (explaining that a "second conviction, even if it results in no greater sentence, is an impermissible punishment" (internal quotation marks and citation omitted)). The penalty for drug possession is greater than the penalty for possession of paraphernalia. This provides support for the proposition that the legislature did not intend punishment under both statutes.

### 4. Commission of Two Crimes Together

{17} We also look at whether the crimes are usually committed together; if they are, this factor will weigh against allowing punishment for both charges. *See State v. Sosa,* 1997-NMSC-032, ¶ 36, 123 N.M. 564, 943 P.2d 1017 (evaluating whether each statute may be violated independently of the other in order to determine if the legislature meant to impose separate punishments for each offense (citing *Swafford,* 112 N.M. at 14–15, 810 P.2d at 1234–35)). At oral argument, the State agreed that although the two crimes can be committed, "in certain circumstances, separately," these crimes "are almost always committed together." We agree that this is generally the case. It is possible to obtain a conviction for possession of drug paraphernalia without a conviction for possession of a controlled substance. It is also possible to imagine a scenario in which a controlled substance is not found in a container. However, the majority of drug possession cases involve drugs in some type of container. Defendant's methamphetamine was contained in a baggie—which, as we have already discussed, fits the legislature's definition of drug paraphernalia. We consider the case before us to be typical, and we conclude that a violation of the possession statute most often would also include a violation of the drug paraphernalia statute.

{18} For this reason, we are not convinced that the legislature meant to punish separately the possession of a controlled substance and the possession of paraphernalia if a container only becomes paraphernalia when it is used to hold the personal supply of the person charged with possession of that controlled substance. We see a difference between numerous items of paraphernalia that are specifically described in Section 30–31–2(V) and common household items that are only recognizable as drug paraphernalia because they contain a personal supply of drugs.

{19} Also instructive to this portion of our analysis is *State v. Corneau,* 109 N.M. 81, 781 P.2d 1159 (Ct.App.1989), a criminal sexual

penetration (CSP) case. In *Corneau,* this Court explained that because some amount of force is inherent in an act of CSP, it is only when there is evidence of additional force that a further charge for false imprisonment does not violate double jeopardy. *Id.* at 86–87, 781 P.2d at 1164–65 ("[A]ny restraint after the completed CSP is separate from the CSP itself, not inherent in the CSP, and does not constitute the same force or coercion necessary to establish CSP[.]" (internal quotation marks omitted)). Under the facts of the present case, the need for a container to hold a small personal supply of a controlled substance is inherent in the act of possessing the controlled substance. An additional charge for paraphernalia would therefore require Defendant to possess an additional item of drug paraphernalia that is not necessary to the act of possession of the controlled substance.

{20} We acknowledge that ordinarily, i.e., when the paraphernalia at issue are items usually associated with drugs, the statutes that punish the possession of controlled substances and the possession of drug paraphernalia are intended to punish distinct wrongs. For example, two punishments would appear to be permitted when a baggie of drugs is found next to a pipe, or even when the drugs are found inside the pipe or inside the syringe. *See State v. Darkis,* 2000–NMCA–085, ¶¶ 2–3, 129 N.M. 547, 10 P.3d 871 (discussing the situation where a defendant was charged with possession of both a controlled substance and paraphernalia when both charges were based on a pipe that contained trace amounts of cocaine). However, when the drug paraphernalia consists of a common, everyday item and when that paraphernalia is only identifiable as such because it is a container for a personal supply of a controlled substance, we do not believe the legislature intended pyramid penalties for the single act of the possession of drugs. *Cf. Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (observing that though Congress intended to create lesser offenses, "there was no indication that Congress intended also to pyramid the penalties"); *Heflin v. United States,* 358 U.S. 415, 419–20, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (observing that when a legislature enacts a new law, it is generally to "reach a new group of wrongdoers" and that the law is not intended to increase punishment for existing offenses but, instead, to cover behavior that has not already been addressed).

## 5. Evaluation of Factors

{21} We have considered the language of the statutes, the societal evils addressed by the statutes, the respective punishments imposed, and the likelihood that the crimes will be committed together. *Armendariz* instructs that "[i]f those factors reinforce the presumption of distinct, punishable offenses, then there is no violation of double jeopardy." 2006–NMSC–036, ¶ 22, 140 N.M. 182, 141 P.3d 526. In the case at hand, the factors do not reinforce the presumption. Here, the two statutes address the same social evils and have different punishments. Moreover, a charge for possessing a personal supply of a controlled substance will almost always carry the additional charge of possession of drug paraphernalia. Indeed, even where a personal supply of a controlled substance is carried loose in a pocket, the offender could be subject to a charge for possessing the controlled substance and a charge for the article of clothing. "We construe statutes so as to avoid reaching such an absurd result[.]" *Compton v. Lytle,* 2003–NMSC–031, ¶ 20, 134 N.M. 586, 81 P.3d 39. After considering all of the indicia of legislative intent outlined in *Armendariz* and *Swafford,* we conclude that the legislature did not intend to punish a defendant for possession of a controlled substance and possession of paraphernalia when the paraphernalia consists of only a container that is storing a personal supply of the charged controlled substance.

{22} Even if we were to determine that the legislature's intent is ambiguous, our conclusion would be the same. When the legislature's intent is not clear, "we apply the rule of lenity, a presumption against imposing multiple punishments for acts that are not sufficiently distinct." *State v. DeGraff,* 2006–NMSC–011, ¶ 32, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted); *see also Swafford,* 112 N.M. at 15, 810 P.2d at 1235 ("Unless an intent to punish separately can be found through application of the canons of construction ..., lenity is

indicated and, in that event, it is to be presumed the legislature did not intend pyramiding punishments for the same offense."). Accordingly, imposing separate punishments under the facts of the present case would violate double jeopardy.

## III. CONCLUSION

{23} We reverse the trial court and remand with instructions to vacate the lesser offense of possession of drug paraphernalia and to retain the conviction for the greater offense, possession of a controlled substance. *See State v. Santillanes,* 2001–NMSC–018, ¶ 37, 130 N.M. 464, 27 P.3d 456. Our holding is necessarily limited to those cases in which the defendant is charged with the crimes of possession of a controlled substance and possession of drug paraphernalia and in which the paraphernalia consists only of a container that stores a personal supply of the charged controlled substance. Other types of paraphernalia and other violations of New Mexico drug laws are not before us. We thus hold that in the present case, separate punishments for possession of drug paraphernalia and possession of a controlled substance violate double jeopardy.

{24} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and LYNN PICKARD, Judge.