This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 29,270**

**JAVIER CASTILLO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

During a search of Javier Castillo's (Defendant) person, law enforcement discovered that Defendant had a pipe in his pocket with methamphetamine residue inside of it. Subsequently, Defendant was convicted of possession of drug paraphernalia and possession of a controlled substance. We now address whether the court erred in denying Defendant's request for a step-down instruction that would have compelled the jury to consider the misdemeanor paraphernalia charge only if it rejected the felony possession charge. We also resolve the substantial evidence questions Defendant raises as to whether he can be convicted of both offenses based on the evidence presented. Lastly, we address Defendant's contention that the district court erred when it asked the jury to deliberate for another half-hour because it constituted an improper shotgun instruction. For the reasons below, we conclude that the district court did not err.

**I.    DISCUSSION**

**A.    Possession of Drug Paraphernalia is an Offense Independent of Possession of a Controlled Substance and Does Not Support a Step-Down Instruction**

Defendant argues that the court should have allowed the step-down instruction requiring the jury to first determine Defendant's guilt for felony possession of the drug before considering the misdemeanor possession of the paraphernalia. "The

2

propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438.

Defendant's argument is unavailing because possession of drug paraphernalia is not a lesser-included offense to possession of a controlled substance "under the facts of this case." The tendered instruction did not provide that the paraphernalia count must be considered if the possession count was rejected. Rather, the jury was instructed individually on both felony possession (Instruction No. 4) and possession of paraphernalia (Instruction No. 5). Instruction No. 6 required that for the jury to find Defendant had possession of a controlled substance, it must determine that Defendant had knowledge of what the substance was, had knowledge of the existence of the substance on his person or in his presence, and had exercised control over it. The instruction explained that being in the vicinity of the controlled substance or knowing of its location, by itself, was insufficient to find possession.

Given that the evidence in this case was the paraphernalia that contained the residue upon which the possession of a controlled substance was based, we agree that the possession charge was, on a factual basis, entirely derivative of the existence of the pipe. If Defendant did not possess the pipe, he did not possess the controlled substance. Factually, the controlled substance charge was dependent upon the misdemeanor, but, legally, the paraphernalia charge is not inclusive of the controlled

substance charge in this case, nor is the opposite true. Each charge requires proof that Defendant possessed entirely different things: drugs and an object used to facilitate the consumption of drugs. The jury was separately instructed on the two counts, and the jury considered both and convicted Defendant on both. The jury had to consider both the controlled substance charge and the paraphernalia charge because the two counts were for separate crimes with entirely separate elements as is discussed hereafter.

In holding that double jeopardy prevented conviction for possessing drug paraphernalia that consisted of an otherwise innocuous item (a baggie) used as nothing more than a container for the drug, we have previously noted that separate charges for possession of both a controlled substance and paraphernalia might be appropriate in a situation where an item specifically intended for a prohibited drug-related purpose was found to contain a drug. *State v. Almeida*, 2008-NMCA-068, ¶ 20, 144 N.M. 235, 185 P.3d 1085 ("[T]wo punishments would appear to be permitted when a baggie of drugs is found next to a pipe, or even when the drugs are found inside the pipe or inside the syringe."). As we would not call the pant pocket in which drugs were carried a type of drug paraphernalia because of the substance it contained, we distinguish between such innocuous items, and items that are specifically used for the

ingestion or introduction of drugs into the body. *Id.* ¶ 21. In this case, the pipe was part and parcel with the drug's use, not with the drug's possession.

Moreover, the fact that residue in a pipe is a minuscule amount of a drug is not important. In New Mexico, the crime of possessing methamphetamine does not depend on the weight of the substance possessed. NMSA 1978, § 30-31-23(A) (2005) (criminalizing the possession of a controlled substance without mention of its weight). In *Almeida*, we recognized that, when viewing two criminal statutes, "if each statute requires an element of proof not required by the other, we presume that the Legislature intended to punish the offenses separately." 2008-NMCA-068, ¶ 9 (alteration omitted) (internal quotation marks and citation omitted). The Legislature enacted two statutes, each criminalizing separate behavior: (1) possessing illegal drugs, and (2) possessing devices used, as relevant here, to deliver the illegal drugs into the human body. In *Almeida*, we concluded that each offense was separate from the other, and each legislative enactment was designed to address two distinct wrongs. *Id.* ¶ 20. As distinct offenses with separate and independent elements, we cannot construe them as Defendant wishes.

Defendant places much stock in *State v. Darkis*, 2000-NMCA-085, ¶ 12, 129 N.M. 547, 10 P.3d 871, in which the defendant's request for an instruction adding the previously uncharged crime of possession of paraphernalia as a lesser-included

5

offense of possession of cocaine was held to be improperly refused. "At the close of evidence, [the d]efendant requested a jury instruction regarding misdemeanor possession of drug paraphernalia, arguing that the State failed to show [the d]efendant knowingly possessed the cocaine residue and that the evidence supported, if anything, only a conviction on the lesser charge." *Id.* ¶ 5. The trial court denied this request, only giving the instruction on the possession charge. *Id.* On appeal, we reversed the defendant's conviction, holding that the instruction for the paraphernalia charge should have been given as the jury should have had "the ability to make a choice . . . between a lesser and a greater charge." *Id.* ¶ 20. *Darkis* is inapplicable to the case at hand, as the jury in the present case received an instruction on both the possession and paraphernalia charges. Thus, this jury had the opportunity to make a choice between convicting Defendant for a felony drug possession or a misdemeanor paraphernalia charge. The jury convicted Defendant on both counts. Moreover, *Darkis* dealt with the defendant's request for a jury instruction on a lesser-included offense, whereas Defendant in this case requested a step-down instruction that would prevent the jury from considering the misdemeanor if it convicted on the felony. Thus, *Darkis* is inapposite to the facts before us.

In this case, the State offended no principles of double jeopardy by charging two separate offenses, each requiring proof of different elements. The jury in this case

was instructed of both offenses and convicted on both offenses. The jury could have acquitted on the felony possession charge and convicted Defendant on the misdemeanor, irrespective of a step-down instruction. Thus, we affirm the district court on this issue and turn to the substantial evidence question.

**B.      The Convictions Were Supported by Substantial Evidence**

We consider a substantial evidence appeal by first viewing the evidence in the light most favorable to support the prevailing party, resolving all conflicts and indulging all permissible inferences to uphold the verdict. *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). Next, we determine if the evidence, when viewed in such a way, could justify a finding beyond a reasonable doubt by any rational trier of fact that each element of the crime charged has been established. *Id.* In other words, we review for sufficient evidence to support the conviction, not whether the fact finder could have reached a different result. *State v. Delgado*, 2010-NMCA-078, ¶ 6, 148 N.M. 870, 242 P.3d 437, *cert. denied*, 2010-NMCERT-007, 148 N.M. 610, 241 P.3d 611. In this case, we largely disregard Defendant's assertions in his brief concerning constructive possession, since at trial his attorney recognized that having contraband in one's pants is generally a matter of physical possession.

Defendant's excuse for possession of the pipe was that he and his brother wore the same kind of baggy pants, and he had put on his brother's pants that morning. The

7

volume of the pants was such that he did not notice the presence of the meth pipe in the pocket during the fifteen minutes in which he wore the pants. Thus, he argues that the search uncovered a contraband item of which he had no knowledge of, nor intent to possess. It was up to the jury to weigh Defendant's testimony. The jury was not obligated to believe his story.

Next, Defendant does not contest the legality of the seizure that established possession of paraphernalia which, upon analysis of the residue, led to the discovery of another crime. In *State v. Wood*, we held that "evidence [of drug paraphernalia on the defendant's person] was sufficient to give rise to a reasonable inference that [the d]efendant knowingly possessed cocaine at the time of his arrest." 117 N.M. 682, 686, 875 P.2d 1113, 1117 (Ct. App. 1994). Similarly, Defendant's intent may be inferred from all the facts in the case. *State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (discussing criminal intent as a subjective and inferential process). The jury was free to believe or disbelieve Defendant's story as they chose. *State v. Day*, 2008-NMSC-007, ¶ 15, 143 N.M. 359, 176 P.3d 1091. Given our deferential review of the facts, we conclude that substantial evidence supported the jury's verdict.

**C.      The District Court Did Not Give a Shotgun Instruction to the Jury**

When the jury informed the district court during deliberations that it could not reach a unanimous decision, the district court discussed the matter with counsel.

8

Defense counsel suggested giving the jury another half-hour. The court then instructed the jury to deliberate for another half-hour. Defendant's counsel did not object to the instruction at trial. Because Defendant neither objected to the instruction nor raised the issue in any other fashion below, we review for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176 (stating that jury instructions are reviewed for fundamental error when no objection was raised below). We also note that in the context of elements instructions, we consider jury instructions as a whole, balancing any failure in part of an instruction against correction in "subsequent proper instructions that adequately address[] the omitted element." *Id.* ¶ 21.

Instructions that coerce a jury into agreement or unduly hasten its consideration of a case are disfavored. *State v. Travis*, 79 N.M. 307, 309, 442 P.2d 797, 799 (Ct. App. 1968). In cases where the court has inquired about the helpfulness of more deliberation, and the jury has responded that continued deliberations would be helpful, the court's permission for further deliberation does not offend the defendant's rights. *State v. Neely*, 112 N.M. 702, 712, 819 P.2d 249, 259 (1991).

In this case, no such information was requested from the jury. Rather, the district judge informed the jury that it was customary for the court and attorneys to "suggest to the jurors that they make one last try." The court further stated:

[U]nless . . . you believe absolutely in your heart of hearts that [further deliberation is] not going to do any good at all[,] then we will let you come back and report that. But for the time being, I'm going to ask you to go spend another thirty minutes thinking through this and[,] in that period of time[,] if you cannot come to a unanimous decision, come back.

In the absence of the district court ascertaining whether the jury believed they would profit from further deliberations, this instruction comes very close to a prohibited shotgun instruction. *See* UJI 14-1630 (providing an example of a shotgun instruction and stating that no such instruction shall be given to a jury); *see also State v. McCarter*, 93 N.M. 708, 710, 604 P.2d 1242, 1244 (1980) (stating that the judge should "communicate with the jury and can do so if the communication leaves with the jury the discretion whether or not it should deliberate further. The court can inform the jury that it *may* consider further deliberations, but not that it *must* consider further deliberations").

To determine whether the instruction constituted a coercive shotgun instruction, we examine several factors, according to *State v. Rickerson*, 95 N.M. 666, 667, 625 P.2d 1183, 1184 (1981). We analyze "(a) whether any additional instruction or instructions, especially a shotgun instruction, were given[;] (b) whether the court failed to caution a jury not to surrender honest convictions, thus pressuring holdout jurors to conform[;] and (c) whether the court established time limits on further deliberations with the threat of a mistrial." *Id*. What saves the instruction given in

10

this case, under the factors set out in *Rickerson*, is that the court cautioned the jurors not to surrender any honest convictions or change their positions and informed them that, if they could not reach a decision in the time provided, to just "come back." The consequences of not agreeing were not discussed, and the instruction clearly acknowledged that sometimes a jury cannot reach a decision. The district court informed the jurors that they had the right to maintain their opinion and referred them to the UJI concerning unanimous verdicts, which contains language instructing them not to surrender their opinions for unanimity or a verdict's sake.

Under the three factors to evaluate judicial coercion set forth in *Rickerson*, this combination of instructions narrowly complies with the no shotgun instruction rule. We decline Defendant's invitation to hold that the district court's conduct in this regard was improper.

**II.     CONCLUSION**

For the foregoing reasons, we affirm the district court.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**