This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                **NO. 31,833**

**VENUSTIANO DURAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
John M. Paternoster, District Judge

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}    Defendant appeals from the judgment and sentence convicting him of kidnapping, attempted criminal sexual penetration (CSP), and aggravated burglary. Specifically, Defendant argues that there was insufficient evidence to support separate convictions for kidnapping and attempt to commit CSP and, in the alternative, the principles of double jeopardy preclude his convictions for both of these crimes. Defendant also asserts, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 001, that his conviction for aggravated burglary was not supported by substantial evidence. We conclude that there was sufficient evidence to support Defendant's convictions for both kidnapping and attempted CSP, as well as aggravated burglary.  However, we hold that under the facts of this case, as presented to the jury by the State, convictions for both kidnapping and attempted CSP violate Defendant's right to be free from double jeopardy.  We therefore reverse and remand to the district court to vacate the lesser offense.

**BACKGROUND**

{2}    The Victim, an eighty-eight-year-old woman, testified at trial that on June 1, 2010, she took her dog for a walk at Taos' Kit Carson Park, a neighborhood park. She stated that she walked by herself, and saw no one on her walk.  Pat Rael, a maintenance worker for the Taos Parks Department, often saw the Victim and would

keep an eye on her in case she fell or needed help. On the morning of June 1, 2010, Mr. Rael saw the Victim twice, and identified Defendant as the man he saw walking a few feet behind her. When the Victim returned to her home, she noticed Defendant behind her. She was unaware of Defendant's presence, and did not know he was behind her until she arrived at the door to her home. Defendant reached over her shoulder with his arm and pushed open the door. She stepped inside, and Defendant followed her inside. The Victim stated that she had not invited Defendant inside. She testified that she was frightened and did not know what to do.

{3}     The Victim and Defendant sat down and Defendant talked the entire time, telling her more than once that he liked older women. The Victim was scared and did not say anything. Defendant talked about himself, telling her where he had gone to college, and describing his education. The Victim testified that she felt "frozen" during the incident because she knew that Defendant intended to rape her. She did not call out for help because no one was there and "it wouldn't have done any good." {4}

Defendant then physically moved the Victim from her chair and placed her on the daybed in her living room. He started to take his clothes off, pulling his pants down so that he was half naked. Defendant then got on top of the Victim, and said something to the effect of "Isn't this fun?" At this point, Carole DeVore, a longtime friend and caretaker of the Victim, arrived at the Victim's home to check on her. Ms.

3

DeVore knocked on the door, and then entered, identifying herself and calling the Victim's name. When she walked in, she found Defendant sitting very close to the Victim on the daybed. Ms. DeVore testified that the situation seemed "very odd and very tense," and described the Victim as "tense, nervous, apprehensive." The Victim volunteered an "odd" introduction of Defendant, as she rolled her eyes while describing Defendant as "a friend." Ms. DeVore testified that she understood from Defendant that he had gotten on his knees and proposed to the Victim, "which really doubly shocked" Ms. DeVore.

{5} Believing the Victim was in trouble, Ms. DeVore left and then called the Victim to ask if she was all right, to which she replied "[n]o." After Ms. DeVore left, Defendant fled out the back door "pretty quick." Ms. DeVore called the police, and afterward drove to the Taos Police Station to give a statement about the incident. Officer Jaime Hurtado took Ms. DeVore's statement, then went to the Victim's home. The officer described the Victim as "frightened, nervous, and alert, like something bad had happened or was about to happen." After interviewing the Victim, the officer called detectives, who initiated the investigation leading to Defendant's arrest and prosecution.

**DISCUSSION**

{6} Defendant challenges the sufficiency of the evidence to support his convictions for both kidnapping and attempted CSP. Defendant further argues, in the alternative, that convictions for both kidnapping and attempted CSP violate his right to be free from double jeopardy. Lastly, Defendant contends that there was insufficient evidence to support his conviction for aggravated burglary. We address each of Defendant's arguments in turn.

**I.      Sufficient Evidence Existed for Kidnapping and Attempt to Commit CSP**

{7}      Defendant argues that the evidence was insufficient to establish a kidnapping where the only evidence of force or restraint was incidental to the attempted CSP. In particular, Defendant contends that evidence that he placed the Victim on a daybed and got on top of her in the course of an attempted CSP failed to establish kidnapping because it requires proof of restraint or confinement that is not incidental to another crime. Defendant asserts that the State relied on this same evidence of restraint to convict Defendant of both kidnapping and attempted CSP.

{8}      "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and

5

supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted).

{9}     Pursuant to NMSA 1978, Section 30-4-1(A)(4) (2003), kidnapping, as alleged in this case, is defined as "the unlawful taking, restraining, transporting[,] or confining of a person, by force, intimidation[,] or deception, with intent . . . to inflict death, physical injury[,] or a sexual offense on the victim." Accordingly, the jury was instructed that to find Defendant guilty of kidnapping, the State had to present evidence establishing the following elements beyond a reasonable doubt:

1.     [D]efendant restrained or confined [the Victim] by force or intimidation;

2.     [D]efendant intended to hold [the Victim] against [the Victim's] will to inflict death, physical injury[,] or a sexual offense on [the Victim.]

*See* UJI 14-403 NMRA (providing jury instruction for kidnapping). The jury was instructed that to find Defendant guilty of attempt to commit CSP, the State had to present evidence establishing the following elements beyond a reasonable doubt:

1.     [D]efendant caused [the Victim] to engage in sexual intercourse, cunnilingus, fellatio, anal intercourse[,] or caused the insertion to any extent, of any object into the vaginal or anal openings of [the Victim], whether or not there is any emission;

6

2.    [D]efendant caused [the Victim] to engage in the above conduct through the use or the threat of physical force or physical violence.

*See* UJI 14-941 NMRA (providing jury instruction for CSP).

1.    [D]efendant intended to commit the crime of [CSP];

2.    [D]efendant began to do an act which constituted a substantial part of the [CSP] but failed to commit the [CSP.]

*See* UJI 14-2801 NMRA (providing jury instruction for attempt to commit a felony).

**{10}**    Defendant contends that because the crime of CSP almost always involves an element of restraint, the State was required to establish that the kidnapping was not incidental to the commission of attempted CSP. *See State v. Trujillo*, 2012-NMCA-112, ¶ 1, 289 P.3d 238, *cert. granted*, 2012-NMCERT-011, 297 P.3d 1227. Defendant asserts the only evidence that he restrained or confined the Victim consisted of her testimony, as supported by the jury instruction and the State's theory in closing arguments, that Defendant placed her on the daybed and got on top of her, either while or after lowering his pants. Defendant further argues that this evidence compels a finding that the restraint in this case was incidental to the attempted CSP since the kidnapping conviction does not rest on facts independent from the attempted CSP, and the restraint involved was completed simultaneously with, and in furtherance of, Defendant's sexual advance on the Victim.

7

{11}     The State argues that the restraint or confinement element of kidnapping is identical to that required for false imprisonment. *See State v. Clark*, 1969-NMSC-078, ¶¶ 10-11, 80 N.M. 340, 455 P.2d 844. It represents "the unlawful interference with the personal liberty or freedom of locomotion of another." *State v. Muise*, 1985-NMCA-090, ¶ 22, 103 N.M. 382, 707 P.2d 1192. The only difference is that kidnapping is based on the defendant's intent to do a further act, which can be inferred from the defendant's later acts. *See Clark*, 1969-NMSC-078, ¶ 11; *see also State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996 (indicating that the jury can infer from acts committed later during the kidnapping that the required criminal intent existed when the victim was first restrained). "The key to the restraint element in kidnapping is the point at which [the v]ictim's physical association with [the d]efendant was no longer voluntary." *State v. Pisio*, 1994-NMCA-152, ¶ 30, 119 N.M. 252, 889 P.2d 860. The State asserts that a rational jury could reasonably find that the kidnapping was complete, though continuing, at the time Defendant reached his hand over the Victim's shoulder, pushed open the door, and uninvited, forced his way in, following the Victim into her home.

{12}     We conclude that there was evidence of force used to restrain or confine the Victim for the kidnapping and there was evidence of a different force used for the attempted CSP. Specifically, there was evidence presented from which the jury could

conclude that Defendant confined the Victim in her home by force or intimidation when he reached over her shoulder, pushed open the door, and uninvited, walked into her home with the intent of holding her against her will. There was also evidence from which the jury could conclude that Defendant restrained the Victim by physically lying on top of her in an attempt to sexually assault her. There is sufficient evidence of a kidnapping that is factually distinct from the attempted CSP because the jury could reasonably infer that all of the elements of the crime of kidnapping were satisfied at the moment Defendant confined the Victim in her home, more specifically, when Defendant initially forced his way inside of the Victim's home with the intent to sexually assault her. Therefore, we conclude that there was sufficient evidence of an independent factual basis for each guilty verdict on the charges of kidnapping and attempted CSP.

**II.  Double Jeopardy for Kidnapping and Attempt to Commit CSP**

{13}  Relying on *State v. Montoya*, 2011-NMCA-074, ¶ 37, 150 N.M. 415, 259 P.3d 820, Defendant further asserts that his convictions for kidnapping and attempted CSP violate his right to be free from double jeopardy. Defendant argues that the Legislature did not intend for kidnapping to be charged in every case where there is some element of restraint if that restraint is incidental to a defendant's conviction for another assaultive offense. Defendant argues that the force used to restrain or confine

9

the Victim was the same force used to commit the attempted CSP. For the purposes of double jeopardy prohibition against multiple punishments, there are two types of cases: (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases; and, (2) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double-description" cases. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. For "double-description" cases, application of the two-part test in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223, is merited: (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to create separately punishable offenses based on the statutes. *See DeGraff*, 2006-NMSC-011, ¶ 26. Multiple punishments for the same offense "is a question of legislative intent, which we review de novo." *State v. Franco*, 2005-NMSC-013, ¶ 5, 137 N.M. 447, 112 P.3d 1104.

{14} We first determine whether Defendant's conduct was unitary. "[U]nitary conduct occurs when the state bases its theory of kidnapping on the same force used to commit [attempted] CSP[.]" *Montoya*, 2011-NMCA-074, ¶ 37. Determining whether unitary conduct exists in a double description case requires consideration of whether the defendant's acts are separated by sufficient "indicia of distinctiveness[.]" *Swafford*, 1991-NMSC-043, ¶ 26. Under these circumstances, "[t]he key

10

consideration is whether the same force was used to commit both crimes." *Montoya*, 2011-NMCA-074, ¶ 31. We have determined that there is sufficient evidence of a kidnapping that is factually distinct from attempted CSP. The jury could reasonably infer that all of the elements of the crime of kidnapping were complete, but continuing, when Defendant confined the Victim in her home by forcing his way inside, uninvited, in order to sexually assault her. *See id.* (recognizing that there is sufficient indicia of distinctness when one crime is completed before another).

**A.      Conduct Underlying Convictions for Kidnapping and Attempt to Commit CSP Was Unitary**

{15}     Nevertheless, we recognize that the principles of double jeopardy may require reversal of a conviction when the jury instructions allow the jury to return a guilty verdict based on a legally inadequate alternative and there is no indication in the record of whether the jury relied on that alternative. *See State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. "[A] conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate, but . . . due process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction." *State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731. {16} Defendant relies on *Montoya* for the contention that where jury instructions and the

11

evidence permit the jury to convict a Defendant of both CSP and kidnapping based on the force or restraint that "is involved in every sexual penetration without consent," then double jeopardy principles require reversal of one of the convictions. 2011-NMCA-074, ¶¶ 38-39. In *Montoya*, the victim stopped her car on the road because a work truck was parked sideways across the road blocking traffic. *Id.* ¶ 2. The driver of the truck gained entry into her car and proceeded to sexually assault her. *Id.* The state argued there was evidence that "the jury could have based the kidnaping conviction on [the d]efendant's confining [the v]ictim by blocking the highway with his truck rather than on the force [the d]efendant exerted in restraining [the v]ictim while committing CSP." *Id.* ¶ 38. However, this Court was "unable to determine from the record whether the jury found that the kidnaping was accomplished by the truck's confinement of [the v]ictim's vehicle or by [the d]efendant's restraint of [the v]ictim inside the vehicle[,]" the same restraint or confinement used to commit the CSP. *Id.* ¶ 39. Because the jury instruction supported either theory of kidnapping, this Court concluded that the conduct underlying both convictions was unitary. *Id.*

{17}     Defendant asserts that the State's theory in closing argument was based solely on evidence of physical restraint by lying on top of the Victim in an attempt to commit a sexual assault. Our review of the record reveals that the prosecutor argued that the evidence of restraint or confinement required for kidnapping was not just that of being

physically held down by Defendant, but of being restrained and confined when Defendant used force to push open the door and follow the Victim inside. However, the prosecutor spoke of the evidence in the alternative. Specifically, the prosecutor read the applicable jury instruction and then asked what the evidence was concerning the elements of being restrained or confined. He then recited all the evidence, stating that there was clear evidence of the Victim being held down on the daybed. Then he stated that there was also evidence of her being restrained or confined to her home. The prosecutor then discussed the force and intimidation elements of the crime and stated that there was evidence concerning the force of being held down, as well as the physical force of going through the door. The prosecutor argued the evidence showed that given the Victim's age and infirmity, she was frightened, intimidated, and scared, and she was confined to the living room of her home, unable to leave or escape.

{18}    Based on the prosecution's theory as expressed in closing arguments and applied to the jury instructions, there were at least two different times at which the jury could determine the kidnapping was complete: when Defendant entered the Victim's home by force or intimidation, and when he physically restrained her by lying on top of her on the daybed. *See Franco*, 2005-NMSC-013, ¶ 7 (stating that in determining whether conduct is unitary, we consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases

13

for the charged offenses). The jury could have relied on either time in order to find that a kidnapping occurred. Because one of the alternative bases for kidnapping was the force of restraining the Victim on the daybed, the same force used to commit the attempted CSP, and we cannot determine from the jury instructions or general verdict form which alternative the jury relied upon, we must conclude that the conduct underlying both convictions was unitary. *See Montoya*, 2011-NMCA-074, ¶ 39; *State v. Frazier*, 2007-NMSC-032, ¶ 24, 142 N.M. 120, 164 P.3d 1 (explaining that when the same conduct supports two different statutory offenses, there is "no way for the conduct not to be unitary" (emphasis omitted)).

**B.      The Legislature Did Not Intend for Unitary Conduct to be Punished as Separate Offenses**

{19}     Because we determine that the conduct was unitary, we proceed to the second prong of the double-description inquiry and look at the legislative intent behind each statute. The purpose is "to determine if the Legislature intended for the unitary conduct to be punished as separate offenses." *Montoya*, 2011-NMCA-074, ¶ 40. In addressing legislative intent for double-description cases, we first look to the statutes at issue to determine if they expressly provide for multiple punishment. *Swafford*, 1991-NMSC-043, ¶¶ 9-12. If they do not, we apply the *Blockburger* test and compare the elements of the relevant statutes to determine if the Legislature intended multiple punishments. *See Franco*, 2005-NMSC-013, ¶ 12 (applying the *Blockburger* test to

14

determine legislative intent); *see also State v. Armijo*, 2005-NMCA-010, ¶ 22, 136 N.M. 723, 104 P.3d 1114 ("When applying the *Blockburger* test to compound offenses or offenses that may be charged in alternate ways, we look only to the elements of the statutes *as charged to the jury* and disregard the inapplicable statutory elements." (emphasis added)).

{20} If the *Blockburger* test "establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *State v. Almeida*, 2008-NMCA-068, ¶ 9, 144 N.M. 235, 185 P.3d 1085 (internal quotation marks and citation omitted). If each statute requires an element of proof not required by the other, we presume that the Legislature intended to punish the offenses separately. *Id.* However, the presumption is not conclusive and "may be overcome by other indicia of legislative intent, including the language, history, and subject of the statutes, the social evils sought to be addressed by each statute, and the quantum of punishment prescribed by each statute." *Id.* ¶ 11 (internal quotation marks and citation omitted).

{21} Since there is no clear legislative intent in the language of the statutes indicating the Legislature intended separate punishment for the same conduct, we apply the *Blockburger* test as modified in *State v. Gutierrez*, 2011-NMSC-024, 150 N.M. 232, 258 P.3d 1024. The modified *Blockburger* test "applies when one of the statutes at

issue is written with many alternatives, or is vague or unspecific." *State v. Gutierrez*, 2012-NMCA-095, ¶ 14, 286 P.3d 608, *cert. denied*, 2012-NMCERT-008, 296 P.3d 490. The elements of kidnapping, as charged and as instructed to the jury, are "the unlawful taking, restraining, transporting, or confining of a person by force, intimidation[,] or deception, with intent . . . to inflict death, physical injury[,] or a sexual offense on the victim." *See* NMSA 1978, § 30-4-1(A)(4) (stating the statutory elements of kidnapping); *see also* UJI 14-403 (stating essential elements jury instruction for kidnapping). Consequently, the kidnapping statute is unspecific, insofar as there are many alternatives, and we must look to the State's theory of the case as it was presented to the jury to determine what the elements in the alternative mean. *See Gutierrez*, 2011-NMSC-024, ¶ 58. Hence, "instead of looking at the statute in the abstract, we look at the legal theory of the offense that is charged" when comparing the elements of the statute under a modified *Blockburger* analysis. *Id.* (internal quotation marks and citation omitted).

{22}    Looking at the legal theory advanced by the State, for kidnapping the jury was required to find that Defendant restrained or confined the Victim by force or intimidation with the intent to hold the Victim against her will to inflict death, physical injury, or a sexual offense. For attempt to commit CSP, the jury was required to find that Defendant intended to cause the Victim to engage in sexual conduct

16

through the use of physical force, and that Defendant began to do an act which constituted a substantial part of the aforementioned act, but failed to commit the act. Attempt to commit CSP requires an effort to perpetrate a sexual offense through the use of physical force. Kidnapping, as alleged by the State in this case, required an intent to restrain the Victim in order to perpetrate a forcible sexual offense. Focusing on the State's legal theory, two alternatives of the evidence presented were that Defendant used force both when he pushed the door open to the Victim's home and walked in uninvited, and when he physically placed the Victim on the daybed, pulled his pants down, and got on top of the Victim in an attempt to engage in a sexual act with her. Therefore, the force used to commit attempted CSP could have been the same force used to commit kidnapping. Had the jury in this case been instructed only on a theory based on non-unitary conduct to establish kidnapping—namely, the theory that Defendant kidnapped the Victim when he reached over the Victim's shoulder, pushed open the door, and forcefully entered her home—then convictions for both attempted CSP and kidnapping would have been proper.

{23} Applying the modified *Blockburger* test, we conclude that the attempt to commit CSP offense was subsumed in the kidnapping offense. Defendant's conviction for attempted CSP required proof of the force used on the Victim in an attempt to restrain or confine the Victim to begin to commit the act of CSP, and this

17

was the same force used to restrain the Victim to hold her against her will for the kidnapping conviction. As previously discussed, the evidence of force or intimidation used to restrain or confine the Victim was argued in the alternative by the State. Under this alternative theory, the attempt to commit CSP offense did not have an element not included in the kidnapping offense and the kidnapping offense could not have been committed without also committing the attempted CSP offense. Therefore, convictions for both kidnapping and attempted CSP violate Defendant's right to be free from multiple punishments, and "punishment cannot be had for both." *Swafford*, 1991-NMSC-048, ¶ 30.

**III.    Sufficient Evidence for Aggravated Burglary**

{24}    Lastly, Defendant asserts that pursuant to *Franklin*, 1967-NMSC-151, and *Boyer*, 1985-NMCA-029, his conviction for aggravated burglary was not supported by substantial evidence. Specifically, Defendant argues that there was no testimony from the Victim or the neighbor that supported a finding that Defendant entered the Victim's home without authorization, or that he entered with an intention to commit a felony. Defendant acknowledges that he is raising this issue for the first time on appeal, and seeks reversal based on fundamental error. *See State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295 (stating that substantial evidence claims can be raised for the first time on appeal as fundamental error).

18

{25} The jury was instructed that to find Defendant guilty of aggravated burglary, it had to find that Defendant entered the Victim's home without authorization, with the intent to commit criminal sexual penetration once inside, and that Defendant touched or applied force to the Victim in a rude or angry manner while entering or leaving, or while inside. *See* UJI 14-1632 NMRA (providing elements for aggravated burglary). There was evidence that the kidnapping was complete when Defendant forcefully entered the Victim's home. The Victim testified that Defendant reached over her shoulder and pushed open the door, and walked into her home uninvited. The jury could infer from Defendant's later act of physically restraining the Victim by lying on top of her, and removing his pants, that he entered her home with the intent to sexually assault her. *See McGuire*, 1990-NMSC-067, ¶ 10 (indicating that the jury can infer from acts committed later during the kidnapping that the required criminal intent existed when the Victim was first restrained). We therefore hold that there was substantial evidence to support Defendant's conviction for aggravated burglary. *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776); *see also State v. Apodaca*, 1994-NMSC-121, ¶ 3, 118 N.M. 762, 887 P.2d 756 (stating that on appeal, the appellate

court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict).

**CONCLUSION**

{26}     We conclude that while there was sufficient evidence to support Defendant's convictions for both kidnapping and attempted CSP under the facts of this case, convictions for both offenses violated double jeopardy principles.  Therefore, we reverse and remand to the district court to vacate the conviction that carries the lesser punishment.  *See State v. Swick*, 2012-NMSC-018, ¶ 31, 279 P.3d 747.  In addition, we affirm Defendant's conviction for aggravated burglary on the basis that it was supported by substantial evidence.

{27}     **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, JUDGE**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, CHIEF JUDGE**

_____

20

**J. MILES HANISEE, JUDGE**