888 P.2d 986

STATE of New Mexico,
Plaintiff–Appellee,

v.

Julian FUENTES, Defendant–Appellant.

No. 15035.

Court of Appeals of New Mexico.

Dec. 2, 1994.

Certiorari Denied Jan. 17, 1995.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BOSSON, Judge.

Defendant was convicted of both armed robbery and aggravated battery with a deadly weapon arising from a single incident at a Roswell convenience store. Defendant raises two issues: (1) whether separate convictions for armed robbery and aggravated battery arising from one continuous activity result in an unauthorized, multiple punishment for the same offense in violation of the Double Jeopardy Clause; and (2) whether the trial court committed reversible error by enhancing Defendant's armed robbery sentence based upon the aggravating circumstances surrounding the battery conviction. We affirm.

### FACTS

On December 21, 1992, Defendant and his twelve-year-old cousin entered a convenience store. When the cashier asked if he could help Defendant, Defendant responded by pushing him toward the cash register and said, "Give me the money or I'm going to stab you." Thereafter, Defendant produced a knife, stabbing the cashier in the arm and back, and slashing his face. The cashier suffered four separate wounds to his face and body. Defendant stole money from the store register, five dollars from the cashier's wal-

let, and several cigarette cartons. The State charged Defendant with one count of armed robbery and one count of aggravated battery under NMSA 1978, Sections 30–3–5(A) and 30–16–2 (Repl.Pamp.1994). A jury convicted Defendant of both counts. The trial court sentenced Defendant to eighteen years for the armed robbery conviction (supplemented because of a prior armed robbery conviction), and enhanced the sentence by six additional years based on a finding of aggravating circumstances, "namely that the [D]efendant stabbed and slashed the clerk with a knife during the robbery." The trial court also sentenced Defendant separately to three years for the aggravated battery conviction, and ordered all sentences served consecutively. Therefore, Defendant received a total sentence of twenty-seven years.

## DOUBLE JEOPARDY

Defendant argues that the trial court erred in imposing separate sentences for armed robbery and aggravated battery because his conviction for aggravated battery was subsumed in the greater offense of armed robbery.

■ The Double Jeopardy Clause separately protects against " 'a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969) (footnotes omitted)). This case involves the third protection: multiple punishments for the same offense. In this context, we review the convictions to ensure that the sentence is not greater than the legislature intended. *See State v. Franklin*, 116 N.M. 565, 568–69, 865 P.2d 1209, 1212–13 (Ct.App.1993); *State v. Charlton*, 115 N.M. 35, 39, 846 P.2d 341, 345 (Ct.App.1992), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993). Our sole inquiry is legislative intent. *See Franklin*, 116 N.M. at 568, 865 P.2d at 1212.

■ Defendant misapprehends our Supreme Court's recent opinion in *Swafford*, which details the appropriate analysis of dou-

ble jeopardy claims based on invidious multiple punishment. He argues that the legislature did not intend separate punishments for armed robbery and aggravated battery when both charges arise out of one criminal act, as occurred here. He maintains that the *facts* supporting his conviction of aggravated battery were also an integral part of the armed robbery charge, and therefore, in effect, he is being punished twice for the same offensive act. Defendant asks this Court to overrule his conviction for aggravated battery because his conviction for armed robbery already punishes him for that same criminal conduct. Our discussion entails a step-by-step application of the *Swafford* analysis to the elements of these crimes.

We begin with a determination of (1) "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes"; and (2) if so, whether the legislature intended multiple punishments for the same (unitary) conduct. *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. Unitary conduct is a prerequisite to this defense because multiple punishments for *separate* acts can never constitute double jeopardy. *Id.* In this case the State concedes, and we agree, that Defendant was engaged in unitary conduct. Defendant stabbed and slashed the cashier with a knife and then immediately robbed both the store and the cashier. The stabbing and the robbery were not separated by any significant time or space; they were part of one continuous and compressed chain of events. *See State v. Pierce*, 110 N.M. 76, 85, 792 P.2d 408, 417 (1990); *State v. Mares*, 112 N.M. 193, 199–200, 812 P.2d 1341, 1347–48 (Ct.App.), *cert. denied*, 112 N.M. 235, 814 P.2d 103 (1991); *cf. Swafford*, 112 N.M. at 15–16, 810 P.2d at 1235–36.

The second inquiry is "whether the legislature intended multiple punishments for unitary conduct." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. The State concedes there is no evidence of express legislative intent to this effect. Therefore, we interpret the provisions of Section 30–16–2, by applying canons of statutory construction, including the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306

(1932), to determine whether the legislature intended that one criminal act, violating two distinct statutes, would constitute two offenses or only one. *Blockburger* requires a comparison of the statutory elements of the separate criminal statutes before deciding whether, as structured by the legislature, one crime is really only a part of, or subsumed by, another greater offense. *See State v. Trevino,* 116 N.M. 528, 530, 865 P.2d 1172, 1174 (1993). If so, "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. A statute stands independently and is not subsumed by another, where each crime "'requires proof of a fact the other does not.'" *Id.* (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182).

The elements of armed robbery and aggravated battery are set forth in the specific statutes as well as in SCRA 1986, 14–322 and –1621. The crime of armed robbery is defined as the enhancement of robbery; it requires the elements of robbery plus the use of a deadly weapon. *See State v. Blea,* 84 N.M. 595, 598, 506 P.2d 339, 342 (Ct.App. 1973). Robbery is "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." Section 30–16–2. The crime of aggravated battery is "the unlawful touching or application of force to the person of another with intent to injure that person or another." Section 30–3–5(A). Robbery requires the specific intent to deprive the victim of his *property;* it is a crime primarily directed toward protection of property interests. Aggravated battery, on the other hand, requires the specific intent to *injure* the victim, which is not present in robbery. *Compare* SCRA 1986, 14–322 *with* SCRA 1986, 14–1621. Comparing the elements of the two criminal statutes it is evident that the element protecting against the theft of property is unique to robbery and absent from aggravated battery. Likewise, the intent to injure element is unique to aggravated battery; property protection is not an element. Therefore, crime has an element requiring proof of a fact the other does not.

Both aggravated battery and armed robbery may involve the use of force, and therefore, to that extent, the two statutes undoubtedly share common ground. Certainly prosecution of the two crimes could rely on evidence which is similar, or even identical, for proof of the different elements of the statutes. In the days before *Swafford,* evidence common to both statutes led this Court to conclude that aggravated battery *was* subsumed by the crime of robbery, precluding a conviction of each. *See State v. Gammil,* 108 N.M. 208, 769 P.2d 1299 (Ct.App.1989) (conviction of both aggravated battery and robbery arising from the same incident constituted double jeopardy). *But see State v. Sandoval,* 90 N.M. 260, 561 P.2d 1353 (Ct. App.) (conviction of both aggravated battery and robbery did not constitute double jeopardy), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977). At the very least, our prior analysis based on the evidence has led to some confusion, as exhibited by Defendant's understandable, but mistaken, reliance on *Gammil* in this appeal.

Recently, our Supreme Court in *Swafford* clarified that it is the statutory *elements* of the crime, not the evidence, that must withstand scrutiny as to whether each crime "'requires proof of a fact the other does not.'" *Swafford,* 112 N.M. at 8, 810 P.2d at 1228 (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182). For this reason *Gammil* and other cases applying the fact-based test found in *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982) (specific elements of the crimes must initially be construed in light of the evidence), are no longer helpful to the double jeopardy multiple punishment analysis; they expressly rely on a commonality of evidence, not elements. Our Supreme Court has stated that it "disagree[s] with application of the *DeMary* test in the multiple punishment context and confine[s] that test to determining the propriety of jury verdict alternatives." *Swafford,* 112 N.M. at 12, 810 P.2d at 1232 (restricting the *DeMary* test to lesser included offenses and the right to a jury instruction on each). Further, we note that *Sandoval* was based on pre-*DeMary* case law regarding double jeopardy. Thus, we think the difference between *Sandoval* and *Gammil* reflects this Court's application

of different Supreme Court precedents regarding double jeopardy. *See State v. Bachicha,* 111 N.M. 601, 606, 808 P.2d 51, 56 (Ct.App.) (Hartz, J., specially concurring), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991). In accord with the decision of our Supreme Court in *Swafford,* we think the analysis applied by this Court in *Gammil* is no longer applicable. Thus, to the extent *Gammil* is inconsistent herewith, it is overruled.

Our comparison of statutory elements is not yet complete. Post–*Swafford* authority suggests that the legislature's use of the disjunctive "or" in the robbery statute might be construed to create, in effect, alternative crimes. "When a criminal statute is written in the alternative, it creates separate offenses for each alternative that are treated separately for double jeopardy purposes." *Franklin,* 116 N.M. at 571, 865 P.2d at 1215; *see State v. Rodriguez,* 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct.App.), *cert. denied,* 113 N.M. 636, 830 P.2d 553 (1992); *see also Swafford,* 112 N.M. at 8–9 n. 4, 810 P.2d at 1228–29 n. 4. In *Rodriguez* the criminal statute used the word "or" to establish four alternative means to prosecute the crime of dangerous use of explosives. Two of the alternatives were submitted to the jury through a general verdict form, which made it impossible to determine on appeal the theory on which the jury based its guilty verdict. *Rodriguez,* 113 N.M. at 772, 833 P.2d at 249. As a result, this Court had to treat each alternative separately for double jeopardy purposes. *Id.* at 771, 833 P.2d at 248. The defendant's conviction for the dangerous use of explosives was ultimately reversed because the elements of one of the two alternatives submitted to the jury were also elements of arson. *Id.* at 772, 833 P.2d at 249.

Following *Franklin* and *Rodriguez,* we think robbery can be presented under alternative theories: (1) robbery by threat of force; (2) robbery by use of force; (3) armed robbery by threat of force; or (4) armed robbery by use of force. In this case the court presented the jury with a general verdict form, which means the jury could have convicted under any of these four theories. Therefore, we must examine whether the elements of any of these theories for robbery overlap with the elements of the crime of aggravated battery.

Defendant argues that the element of "intent to injure" required for aggravated battery is implicit in, and therefore subsumed by, the "use of force or violence" required to commit armed robbery. If true, that would preclude conviction under both statutes for a unitary act, at least by use of a general verdict. However, we do not agree with the assumption posited by Defendant. A person can use force or violence during a robbery without intending to injure the victim. The use of a lesser degree of force such as pointing a gun or knife at the body during a robbery would constitute the taking of property by the "use of force or violence" under Section 30–16–2, but it may not be an act with an "intent to injure." In fact, it would be fairly persuasive evidence of an intent *not* to injure, since in this hypothetical the assailant would refrain from using the gun or knife to injure the victim. Accordingly, the central elements of robbery, even when dissected under a *Franklin/Rodriguez* analysis, do not subsume the elements of aggravated battery. Therefore, each still requires "proof of a fact the other does not," and a conviction of each may stand independently of the other.

At oral argument Defendant postulated that "force or violence" may also be broken down into separate, alternative theories for conviction of armed robbery: (1) taking of property by force, and (2) taking of property by violence. To Defendant, the term "violence" necessarily subsumes the "intent to injure" element of aggravated battery even if "force," by itself, may not. The novelty of the argument is both its appeal and its undoing. The legislature has used the phrase "force or violence" interchangeably with the phrase "force and violence," *compare* NMSA 1953, § 40A–16–2 (Repl.Vol. 6, 1964) (effective July 1, 1963) (robbery defined) *with* NMSA 1953, § 40–42–1 (Vol. 6) (robbery while unarmed defined), and this indicates the legislature intended no distinction in the current statute. The case of *Territory v. Abeita,* 1 N.M. 545, 547 (Gild.) (1873), Defendant's only citation in support of this proposition, implies that the two terms may have

been used differently 100 years ago, but we are not persuaded that the legislature intended any such difference in recent years, particularly in the absence of case law to that effect. Alternatively, we note that ample authority would also support a holding that the terms are used synonymously in criminal statutes, thereby refuting Defendant's argument. . See, e.g., King v. State, 527 So.2d 641, 646 (Miss.1988) (holding that "violence is synonymous with 'force,'" in affirming armed robbery conviction); Smith v. State, 737 P.2d 1206, 1215 (Okla.Crim.App.), ("The word 'force' is actually used to define violence."), cert. denied, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); Commonwealth v. Mlinarich, 345 Pa.Super. 269, 498 A.2d 395, 400 (1985) (force and violence synonymous when defining rape), aff'd, 518 Pa. 247, 542 A.2d 1335 (1988) (per curiam); Wisdom v. State, 708 S.W.2d 840, 843 n. 3 (Tex.Crim.App.1986) (en banc) (violence and force are synonymous when used in relation to assault); City of Pasco v. Ross, 39 Wash.App. 480, 694 P.2d 37, 39 (Wash.Ct.App.1985) (same); Black's Law Dictionary 644, 1570 (6th ed. 1990) ("force" is defined as "[p]ower, violence, compulsion, or constraint exerted upon or against a person or thing," and "violence" is defined as "unjust or unwarranted exercise of force"); Webster's Third New International Dictionary 2554 (1970) ("violence" defined as "exertion of any physical force so as to injure or abuse....").

Finally, the court must examine any other indicators of legislative intent for a possible rebuttal of the presumption that the statutes punish different offenses, and therefore permit separate punishments. For example, if two statutes prohibit the same kind of deviant conducts, although through somewhat different means, it may be inferred that the legislature did not intend multiple punishments. See Swafford, 112 N.M. at 14–15 n. 7, 810 P.2d at 1234–35 n. 7. In this context, "[t]he court must identify the particular evil sought to be addressed by each offense." Id. 112 N.M. at 14, 810 P.2d at 1234.

We have no difficulty concluding that these two criminal statutes regulate distinct deviant social conducts and protect separate, societal interests. As stated earlier, the specific intent element of the robbery statute protects against theft of anything of value through the use of force. Although the enhancement from robbery to armed robbery provides for a greater punishment, due to the increased personal danger to the robbery victim, it does not change the underlying social evil which the statute is designed to punish—that of crimes against property. The specific intent element of the aggravated battery statute also addresses the use of force, but it is only force directed against a person. Whereas robbery primarily protects property, aggravated battery directly protects people. Compare SCRA 14–1621 with SCRA 14–322 (intent requirements of respective jury instructions). At the very least, any overlap or similarity between the statutes is not so overwhelming as to negate the presumption of a legislative intent which is entirely consistent with separate punishments. See State v. Gonzales, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992) (social misconduct proscribed by different statutes are construed narrowly); Swafford, 112 N.M. at 14–15, 810 P.2d at 1234–35 (same).

Similarly, the quantum of punishment authorized for each crime is harmonious with independent punishments. Swafford instructs that "[w]here one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes." Id. 112 N.M. at 15, 810 P.2d at 1235. For further support, we turn to People v. Robideau, 419 Mich. 458, 355 N.W.2d 592 (1984), which, ironically, rejected the Blockburger test, but nonetheless was cited by Swafford for its rich analysis of multiple punishments and the meaning of this consideration.

Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions.

*Robideau,* 355 N.W.2d at 604. This is not the case with armed robbery and aggravated battery. There is no indication of one crime being a "base statute" for the other, or that one is merely an aggravated form of the other. The two stand alone, with independent elements and separate policy objectives. The fact that punishment for armed robbery is three times the punishment for aggravated battery is one point in favor of Defendant's position, but it is not alone persuasive.

Therefore, applying canons of statutory construction to these two criminal statutes, we conclude that separate punishment is, indeed, consistent with legislative intent and does not constitute double jeopardy.

## ALTERATION OF DEFENDANT'S SENTENCE FOR ARMED ROBBERY

■ The trial court increased Defendant's sentence for armed robbery by six years, based upon a finding of aggravating circumstances surrounding the battery; "namely that the [D]efendant stabbed and slashed the clerk with a knife during the robbery." *See* NMSA 1978, § 31–18–15.1 (Repl.Pamp.1994) (authorizing increase in sentence by one-third based on a finding of aggravating circumstances). Our Supreme Court in *Swafford* held that a trial judge, in considering enhancement, cannot consider the elements of a "separate, but contemporaneous, conviction as an aggravating factor." *Id.* 112 N.M. at 16, 810 P.2d at 1236. However, the trial court is free to consider the "circumstances surrounding the offense," Section 31–18–15.1, as long as the court does not rely solely on the elements of the statute necessary to define the crime.

More recently, this Court in *State v. Kurley,* 114 N.M. 514, 841 P.2d 562 (Ct.App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992), addressed a similar situation. In *Kurley,* the defendant and his companions severely beat another man to death. *Id.* at 515, 841 P.2d at 563. The defendant was convicted of aggravated battery with great bodily harm and his sentence was enhanced in part because of "the brutal nature of the crime." *Id.* On appeal, the defendant argued "that the brutality itself was the 'great bodily harm' contemplated by the statute," and therefore he was being punished twice

for the same offense. *Id.* at 516, 841 P.2d at 564. We held that the "brutality" surrounding the defendant's crime of aggravated battery with great bodily harm was not an element of the crime "but was a circumstance surrounding the crime that could be considered by the trial court in aggravating defendant's sentence." *Id.*

In this case, Defendant repeatedly stabbed and slashed the cashier in the face, arms, and back, causing four separate wounds. Defendant contends that the stabbings and slashings were used first to convict him of aggravated battery, and then to aggravate his sentence for armed robbery. We disagree. Evidence that Defendant stabbed or slashed the victim with a knife, constituted evidence upon which the jury could find that Defendant committed the offense of aggravated battery. *See* § 30–3–5(A). The trial court could properly find that Defendant's acts of *repeatedly* stabbing the victim constituted "circumstances surrounding the offense," warranting enhancement of Defendant's sentence. *See* § 31–18–15.1; *State v. Wilson,* 97 N.M. 534, 538, 641 P.2d 1081, 1085 (Ct.App.) (proof of the element of intent to injure for aggravated battery "does not eliminate the circumstances surrounding either that element or the entire offense from being considered" for aggravation purposes), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982); *Kurley,* 114 N.M. at 516–17, 841 P.2d at 564–65; *see also State v. Bernal,* 106 N.M. 117, 118, 739 P.2d 986, 987 (Ct.App.) (circumstances or events surrounding a crime and its elements may be considered when increasing a sentence), *cert. denied,* 106 N.M. 81, 738 P.2d 1326 (1987); *cf. Franklin,* 116 N.M. at 569, 865 P.2d at 1213 (*Swafford* precludes "using a required element of an offense twice in a sentencing proceeding—first, to establish the base sentence and, second, to aggravate or enhance the sentence—in the absence of an express legislative intent to so use that element."). Furthermore, the brutal manner in which the stabbings occurred is evidence of "more culpab[ility]" on behalf of the defendant than perhaps a single knife wound. *Kurley,* 114 N.M. at 516, 841 P.2d at 564. Culpability bears on factors relevant to aggravating a defendant's sentence; i.e., reha-

bilitation, threat to society, and the harm resulting from the crime. *Id.* Therefore, the brutal nature of the crime can be considered when aggravating a defendant's sentence. *Id.* The "circumstances surrounding the offense," and not the elements of the offense itself, were properly considered by the trial court in finding aggravating circumstances. *Wilson,* 97 N.M. at 538, 641 P.2d at 1085.

## CONCLUSION

Defendant's convictions and sentences are affirmed.

**IT IS SO ORDERED.**

MINZNER, C.J., and DONNELLY, J., concur.