Certiorari Denied, August 13, 2012, No. 33,717

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-095

Filing Date: June 18, 2012

Docket No. 30,439

STATE OF NEW MEXICO,

 Plaintiff-Appellee,

v.

SONNY J. GUTIERREZ,

 Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James Waylon Counts, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

HANISEE, Judge.

{1} This case is among the flood of "double-description" type double jeopardy challenges this Court reviews each year. And while the legal path in this area is well worn, the facts here are surprisingly novel. Sonny Gutierrez (Defendant), a former employee of the

1

Kentucky Fried Chicken (KFC) restaurant in Alamogordo, robbed nearly ten-thousand dollars from KFC assistant manager Louann Logan during her daily-deposit routine of KFC's proceeds. Ms. Logan, whom Defendant struck in the face while simultaneously relieving her of the money, also happened to be his girlfriend of two months. That unlikely merger of robbery and romance netted Defendant separate convictions based on two distinct statutes: (1) robbery, contrary to NMSA 1978, Section 30-16-2 (1973), and (2) battery against a household member, contrary to NMSA 1978, Section 30-3-15 (2008). On appeal, Defendant argues that because both convictions arose from the same criminal conduct, his double jeopardy rights were violated. Applying our precedent in this area, we hold that Defendant's unique combination of convictions does not offend our notions of double jeopardy. Accordingly, we affirm.

**BACKGROUND**

**{2}** The State presented Ms. Logan as a witness at trial. She testified that she had known Defendant for three years, first as an employee at the KFC where she was assistant manager, and most recently as her boyfriend. Several weeks prior to the robbery, however, Defendant resigned his employment with KFC.

**{3}** On the morning of July 28, 2008, Ms. Logan drove to Defendant's motel room, where he had been living with his three children, in order to transport Defendant to a local fast-food restaurant and purchase breakfast for his children. After driving Defendant to the restaurant, providing money for breakfast, and also lending Defendant her cell phone, Ms. Logan reported for work at KFC.

**{4}** While on duty, Ms. Logan received several calls from Defendant in which he told her that he wanted to return her cell phone to her at work. Ms. Logan agreed to meet Defendant outside KFC, and while awaiting his arrival she prepared two money bags containing KFC's proceeds for a routine deposit she planned to make at a nearby bank.

**{5}** When Ms. Logan exited the store with the money bags, Defendant was waiting for her in the passenger seat of a truck parked alongside Ms. Logan's vehicle. Ms. Logan talked with Defendant briefly as she approached and then entered the driver's side of her vehicle. While her door remained open, Defendant exited the truck and walked toward Ms. Logan's vehicle under the guise of delivering her cell phone. Instead, he suddenly grabbed the two money bags and struck Ms. Logan with his fist on the side of her face. Defendant immediately re-entered the truck with the money, instructed the driver to "go," and fled the scene.

**{6}** Police later arrested Defendant, and he was charged with both robbery and *aggravated* battery against a household member. At the subsequent trial, however, the jury was instructed only as to robbery and the lesser charge of *simple* battery against a household member. Defendant was convicted of both, and now brings this appeal on double jeopardy grounds, pursuant to both the United States and New Mexico Constitutions. He argues that

he was impermissibly punished twice for the same underlying criminal conduct. We address the merits of Defendant's appeal below.

**DISCUSSION**

{7} The double jeopardy clause established within the Fifth Amendment of the United States Constitution, and echoed within Article II, Section 15 of the New Mexico Constitution, states that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. One of the functions of that clause is to protect "against multiple punishments for the same offense." *State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted).

{8} As with all constitutional questions of law, we review double jeopardy claims de novo. *State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985. And because Defendant's claim is a double-description type double jeopardy claim, which involves convictions of multiple statutes based on the same criminal conduct, we apply the analysis set out in *Swafford v. State*, 112 N.M. 3, 8-9, 810 P.2d 1223, 1228-29 (1991). The *Swafford* analysis provides a two-part inquiry for double-description claims: first analyzing "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes," and, if so, proceeding to analyze "whether the legislature intended to create separately punishable offenses." 112 N.M. at 13, 810 P.2d at 1233.

{9} The parties agree that the criminal activity herein amounts to unitary conduct under the first prong. A brief review of the facts offered at trial supports that consensus. Defendant struck Ms. Logan in the face in nearly the same motion as he relieved her of KFC's money bags. The blow and the robbery "were not separated by any significant time or space; they were part of one continuous and compressed chain of events." *State v. Fuentes*, 119 N.M. 104, 105, 888 P.2d 986, 987 (Ct. App. 1994). Accordingly, we move to an analysis of the second prong of *Swafford*—legislative intent. *State v. Franco*, 2005-NMSC-013, ¶ 11, 137 N.M. 447, 112 P.3d 1104 (noting that when the conduct is unitary, "we proceed to the second part of the *Swafford* analysis to determine whether the Legislature intended to allow multiple punishments based on the facts and circumstances of this case").

{10} "[T]he sole limitation on multiple punishments is legislative intent, and, unless the Legislature clearly authorized multiple punishments, we apply the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine that intent." *Franco*, 2005-NMSC-013, ¶ 12 (alteration in original) (internal quotation marks and citation omitted). Here, the State does not contend that the Legislature has expressly provided for multiple punishments. Indeed, neither Section 30-16-2 nor Section 30-3-15 contains any language that would guide our analysis with respect to overlapping punishment. Absent express legislative authorization of multiple punishments, we thus proceed to an application of the *Blockburger* test. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

3

**{11}** *Blockburger* provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. "In applying the *Blockburger* test, this Court compares the elements of each crime with the elements of the other . . . ." *State v. Lee*, 2009-NMCA-075, ¶ 9, 146 N.M. 605, 213 P.3d 509. "If each statute requires proof of a fact that the other does not, it may be *inferred* that the Legislature intended to authorize separate punishments under each statute." *State v. Swick*, 2012-NMSC-018, ¶ 13, ___ P.3d ___ (No. 32,510, Jun. 1, 2012) (emphasis added).

**{12}** In this case, Defendant concedes that "[t]he elements of battery [against] a household member do . . . contain an element that is extraneous to the elements of robbery: [Ms.] Logan's status as a 'family member[,]' . . . [which] introduce[s] a formal element that, under the *Blockburger* test, establishes the battery as a crime distinct from the robbery." Indeed, the statute requires proof of "the unlawful, intentional touching or application of force *to the person of a household member*, when done in a rude, insolent or angry manner." Section 30-3-15(A) (emphasis added). "[H]ousehold member" is defined broadly as including "a person with whom a person has had a continuing personal relationship"—or in other words, "a dating or intimate relationship." NMSA 1978, § 30-3-11 (2008) (amended 2010). Robbery, of course, contains no requirement that the victim have any specific relationship to the assailant. *See* § 30-16-2 (using the broad term, "the person of another"). The crime of robbery likewise contains an element extraneous to the battery: "the theft of anything of value." *Id.* Battery simply requires the application of force, not the deprivation of property. Considered together, the coupled offenses are elementally distinct.

**{13}** Under a strict application of *Blockburger* then, an inference arises that our Legislature intended separate punishment because "each statute requires proof of an element that the other does not." *Caldwell*, 2008-NMCA-049, ¶ 11. Defendant acknowledges as much, but argues that we should (1) instead apply the situationally modified *Blockburger* analysis adopted by our Supreme Court in *Gutierrez*, or (2) conclude that the inference is overcome based on other indicia of legislative intent. While Defendant in fact correctly assesses the difficulties he faces under our traditional *Blockburger* analysis, we disagree with his assertion of how he circumvents its reach.

**{14}** First, even were we to apply the modified *Blockburger* analysis as adopted in *Gutierrez*—and it is not clear that we should—Defendant's battery against a household member conviction still cannot be subsumed within the robbery conviction. *Gutierrez* applies when one of the statutes at issue is written with many alternatives, or is vague or unspecific. Then, a reviewing court should "look at the legal theory of the offense that is charged," "instead of looking at the statute in the abstract" when comparing elements under *Blockburger*. *Gutierrez*, 2011-NMSC-024, ¶ 58 (internal quotation marks and citation omitted). Here, a comparison of the elements as written in the tendered jury instructions, which evince the State's legal theory, demonstrates the same extraneous elements present under our analysis of the statutes.

4

**{15}** The jury was instructed as to the battery against a household member charge, pursuant to Section 30-3-15, as follows:

> For you to find the defendant guilty of battery on a household member, . . . the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> > 1.     The defendant intentionally touched or applied force to Ms. Louann Logan by hitting her in the face with his hand;
> >
> > 2.     The defendant acted in a rude, insolent or angry manner;
> >
> > 3.     *Louann Logan is a household member*;
> >
> > 4.     This happened in New Mexico on or about the 28th day of July, 2008.

(Emphasis added.)

In comparison, the jury received the following elemental instructions on robbery, pursuant to Section 30-16-2:

> For you to find the defendant guilty of robbery[,] . . . the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> > 1.     *The defendant took and carried away a bank bag containing US Currency from Louann Logan, or from her immediate control intending to permanently deprive Louann Logan and Kentucky Fried Chicken of the property*[;]
> >
> > 2.     The defendant took the bank bag by force or violence[;]
> >
> > 3.     This happened in New Mexico on or about the 28th day of July 2008.

(Emphasis added.)

**{16}** Under the battery charge, the State was required to show—and the jury was required to find—that Ms. Logan was a household member. That relationship was not a required element of the robbery charge. That "the person" referred to in the robbery statute was Ms. Logan, who happened to also be a household member based on her intimate relationship with Defendant, does not alter the State's legal theory of robbery. That theory simply required identification of a "person," not the showing of any particular relationship between "the

5

person" and Defendant. *See* § 30-16-2. With respect to the robbery charge, the State's legal instructions require a finding that Defendant "took and carried away a bank bag." Likewise, that requirement does not appear in the battery charge. Therefore, even under the modified *Blockburger* test, in which we analyze the fact-specific theory of the case, robbery and battery against a household member each requires proof of a fact that the other does not. Accordingly, we continue to infer that the Legislature intended separate punishment.

**{17}** As a final argument, Defendant maintains that the inference is negated by an examination of the common purpose behind both the robbery and battery against a household member statutes. To that end, Defendant argues that "[t]he two statutes at issue here protect similar societal interests"—protection of the person against the threat of injury. While we agree that such an inference of Legislative intent based on elemental distinctness may be called into question by "other indicia of legislative intent, including the language, history, and subject of the statutes, the social evils sought to be addressed by each statute, and the quantum of punishment prescribed by each statute," *State v. Almeida*, 2008-NMCA-068, ¶ 11, 144 N.M. 235, 185 P.3d 1085 (internal quotation marks and citation omitted), we decline to read the purpose of the statutes in such a broadly homogenous manner.

**{18}** We note that our Supreme Court recently clarified this analysis by explaining that elemental distinctness between two crimes results in merely an inference "that leads to an examination of other indicia of legislative intent." *Swick*, 2012-NMSC-018, ¶ 13 (emphasis added). And that "[i]f after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Id.* Nonetheless, we conclude that even after such an examination, the legislative intent here is not ambiguous. The distinct policy directives and subject matter of robbery and battery against a household member, and their rare occurrence together, persuade us that the legislature intended these crimes to be punished separately, even when they occur as part of the same criminal transaction.

**{19}** In *Fuentes*, this Court distinguished the policy directives of robbery and aggravated battery. 119 N.M. at 109, 888 P.2d at 991. The Court recognized the robbery statute as "primarily directed toward protection of property interests," and the aggravated battery statute as "address[ing] the use of force . . . directed against a person." 119 N.M. at 106, 108, 888 P.2d at 988, 990 ("Whereas robbery primarily protects property, aggravated battery directly protects people."). And though the Court acknowledged that "[b]oth aggravated battery and armed robbery may involve the use of force," it stated that "[w]e have no difficulty concluding that these two criminal statutes regulate distinct deviant social conducts and protect separate, societal interests." *Id.*

**{20}** We conclude that the statutes which regulate robbery and battery against a household member are similarly distinct in purpose. As *Fuentes* has already recognized, robbery primarily addresses the protection of property, albeit specific to takings by force. And similar to *aggravated* battery, simple battery protects persons from the impermissible application of force. But battery against a household member even more specifically

6

protects against the use of that force when it is directed at a certain group of people—household members.  Thus, the legislative purpose of criminalizing battery against a household member applies to a narrower class of persons than either aggravated or simple battery.  Guided by the logic that underpins this Court's holding in *Fuentes*, we must conclude that the separate crimes of robbery and battery against a household member likewise address distinct deviant social conduct, even when simultaneously committed.

{21}    We also follow *Fuentes*' reasoning with respect to the quantum of punishment authorized for each crime.  Under *Swafford*, "[w]here one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes."  112 N.M. at 15, 810 P.2d at 1235.  Here, as in *Fuentes*, robbery carries three times the potential punishment of battery against a household member— a fact that initially favors Defendant's position.  119 N.M. at 109, 888 P.2d at 991.  But also like *Fuentes*, battery against a household member is not a "base statute" for robbery, just as aggravated battery is not a base statute for armed robbery.  *Id.*  "The two stand alone, with independent elements and separate policy objectives."  *Id.*

{22}    Furthermore, we are not aware of any evidence that these two statutes are likely to be violated together.  *See State v. Gonzales*, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992) (listing a determination of "whether the statutes are usually violated together" as relevant to an examination of legislative intent).  To the contrary, there does not appear to be a single case in our State's appellate history in which a defendant was charged with both robbery and battery against a household member for the same criminal event.  We therefore conclude, as this Court did in *Fuentes*, that our inference under *Blockburger* is undisturbed and "that separate punishment is, indeed, consistent with legislative intent and does not constitute double jeopardy."  *Fuentes*, 119 N.M. at 108-09, 888 P.2d at 990-91.

**CONCLUSION**

{23}    Defendant's convictions for both robbery and battery against a household member are affirmed.

{24}    **IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

7

**LINDA M. VANZI, Judge**

**Topic Index for** *State v. Gutierrez*, **No. 30,439**

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Battery
Domestic Violence
Robbery

**CRIMINAL PROCEDURE**
Double Jeopardy