This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36887**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CHRISTOPHER VALDIVIA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Christopher Valdivia appeals from the district court's denial of his motion to suppress following his conditional guilty plea to possession of a controlled substance, NMSA 1978, § 30-31-23(E) (2011, amended 2019), tampering with evidence, NMSA 1978, § 30-22-5 (2003), battery upon a peace officer, NMSA 1978, § 30-22-24 (1971), and resisting, evading or obstructing an officer, NMSA 1978, § 30-22-

1(B) (1981). Defendant additionally raises a double jeopardy challenge, arguing his convictions for battery upon a peace officer and resisting, evading or obstructing an officer violate double jeopardy. We affirm.

## BACKGROUND

**{2}**     Officer Veronica De La O of the Las Cruces Police Department testified at the suppression hearing as follows. The police department received a call reporting a man slumped over in a chair in the front yard of a residence; the caller could not tell whether the man was breathing. Officers De La O and Francisco Gomez separately were dispatched, with Officer De La O arriving first and Officer Gomez arriving shortly thereafter. Officer De La O identified the residence as "a known drug house"—she previously had responded to the residence for drug overdoses and had observed narcotics in the residence. When she arrived, Officer De La O parked a couple houses away and walked to the residence to find Defendant, who appeared to be sleeping, slumped over in the yard. Officer De La O recognized Defendant from previous encounters and, based on this, believed he might have used or been in possession of drugs.

**{3}**     Officer De La O approached Defendant and tried to rouse him "to make sure that he was okay, since [she] didn't know the circumstances." She explained, "Being that he could be under the influence of narcotics, I didn't want to just walk away in case he was overdosed, and there were also children in the neighborhood across the street." She began "calling out to him, trying to wake him up." Defendant did not wake up the first time she called out but started to wake up the second time. Defendant "seemed a little out of it," but when Officer De La O asked if he was okay, he said he was "fine." By that point, Officer Gomez had also arrived on scene, and the two officers continued to ask Defendant if he was okay to ensure he was "alert and oriented" before they left.

**{4}**     During this time, the officers observed an open container on the ground next to Defendant containing a green leafy substance, which Officer De La O recognized as spice or marijuana, and bulges in Defendant's knee-high socks. In response to Officer Gomez asking what was in his socks, Defendant twice removed folded pieces of paper from his socks and consumed them. Officers then gained control of Defendant, handcuffing him, and Officer De La O recovered an additional paper containing heroin from Defendant's socks. As Defendant was being escorted to the patrol unit, he pulled away from the officers and began to run. Defendant was brought to the ground by Officer Gomez. Defendant then kicked Officer De La O as the officers tried to regain control of him. At some point, officers called for emergency services to check out Defendant, given his consumption of the heroin packets.

**{5}**     Defendant also testified at the suppression hearing to the following. On the day in question, Defendant was unconscious in a chair outside the residence, and he had not eaten or slept in a week. He testified that officers did not ask him about his well-being but instead their first question to him was, "what's in your sock?" During his testimony,

Defendant admitted to possessing spice and heroin, consuming two packets of heroin, and trying to run after being handcuffed.

{6}     Defendant's motion to suppress argued that—although the officers stated they were performing duties as "community caretakers"—the community caretaker exception to the warrant requirement did not apply in this case because the officers were, in reality, motivated to investigate a drug crime. After hearing testimony from Officer De La O and Defendant, as outlined above, the district court denied the motion. Defendant later entered a no contest plea to all charges and, as relevant to this appeal, stipulated to the factual basis for battery upon a peace officer (Count 3) and resisting, evading or obstructing an officer (Count 4) as follows. As for Count 3, "[D]efendant was allegedly uncooperative throughout the encounter, and is alleged to have kicked one of the officers as she was trying to detain him." As for Count 4, "when the officers were beginning to arrest [D]efendant . . . he also ran away from the officers."

## DISCUSSION

### I.     Motion to Suppress

{7}     Defendant initially contends that the district court misunderstood its fact-finding role in denying the motion to suppress. In light of this, Defendant then invites this Court to reweigh the evidence and determine that the officers were primarily motivated to investigate drug crimes, not to provide emergency aid. We first explain why Defendant has misapprehended the district court's ruling and this Court's role on appeal. Next, upon applying the required standard of review, we detect no error in the district court's denial of the motion to suppress.

{8}     Defendant first contends that the district court "refused to consider the evidence that indicated the officers' primary motivation was to investigate for criminal activity" and "failed to exercise its fact-finding discretion[.]" Defendant thus posits that "the [district] court's implicit finding of a primary motivation of community caretaking is not entitled to the deference of substantial evidence review." These contentions are not supported by our review of the record or the applicable law. In arguing the suppression motion, defense counsel requested the district court draw the inference that the officers' motivation was a drug investigation. In support, counsel pointed to various facts, including that Officer De La O parked down the street and walked to the house (instead of running), recognized the house as a known drug house, and surmised Defendant might be in possession of drugs based on her prior encounters with him. The district court rejected defense's argument, emphasizing that the officers were responding to a welfare check dispatch and that Officer De La O's testimony was "reasonable." The district court made clear its belief that the inferences defense counsel wished the court to draw were not "supported by the evidence." The court denied the motion, stating that "there's been sufficient testimony that would substantiate that there was a response to a call concerning the well-being of the individual." Contrary to Defendant's characterization, the record demonstrates that the district court considered the evidence and exercised its fact-finding discretion in rejecting defense's requested inferences.

Moreover, Defendant's suggested approach on appeal, which would have this Court parse the district court's oral pronouncements and draw inferences contrary to the district court's decision, runs afoul of our well-established practice of employing presumptions and inferences in favor of a district court's suppression ruling. *See State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856 ("[W]e will draw all inferences and indulge all presumptions in favor of the district court's ruling.").

**{9}** We turn now to Defendant's substantive challenge of the suppression ruling. Defendant below and on appeal disputes the applicability of the community caretaker exception—and in particular, the emergency assistance doctrine[1] branch of that exception—to justify the officers' actions. Because Defendant preserved a state constitutional claim and because our constitution already has been construed to provide greater protections than the federal constitution in this situation, we examine the suppression issue here under the New Mexico Constitution only.

**{10}** In *State v. Ryon*, 2005-NMSC-005, ¶¶ 29-39, 137 N.M. 174, 108 P.3d 1032, our Supreme Court articulated a three-prong test to determine whether the emergency assistance doctrine excused a warrantless, nonconsensual entry into a home.

> First, the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. Second, the search must not be primarily motivated by intent to arrest and seize evidence. Third, there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Id.* ¶ 29 (alterations, internal quotation marks, and citations omitted). Once lawfully present, "officers may expand the scope of the intrusion, if probable cause or reasonable suspicion arises," and "may also seize evidence of a crime that is in plain view or arrest a suspect if there is probable cause." *Id.* ¶ 38. Although the *Ryon* test was later modified under the Fourth Amendment of the United States Constitution, it was retained under Article II, Section 10 of the New Mexico Constitution. *See State v. Yazzie*, 2019-NMSC-008, ¶¶ 23, 44-48, 437 P.3d 182.

**{11}** Our review of the applicability of the emergency assistance doctrine, as with other suppression rulings, is a mixed question of fact and law. *See Ryon*, 2005-NMSC-005, ¶ 11. We first look for substantial evidence to support the district court's factual

---

1While the State urges us to apply the less stringent public servant doctrine branch of the community caretaker exception, we assume without deciding that the emergency assistance doctrine applies here because Defendant's claim nevertheless fails under that standard. We underscore that we express no opinion as to whether the emergency assistance doctrine does in fact apply to the situation at issue in this case—i.e., to the publicly visible portions of a front yard. *See State v. Sheehan*, 2015-NMCA-021, ¶ 11, 344 P.3d 1064 ("The emergency aid doctrine applies specifically to warrantless intrusions into the home." (internal quotation marks and citation omitted)); *State v. Hamilton*, 2012-NMCA-115, ¶¶ 16-17, 290 P.3d 271 (observing that "[g]enerally, the curtilage is the enclosed space of the grounds and buildings immediately surrounding a dwelling house[,]" and considering several factors to determine whether a specific location is within the curtilage of a residence, and thereby subject to constitutional privacy protections (internal quotation marks and citation omitted)).

findings, deferring to the district court's findings, indulging all reasonable inferences in support of the district court's decision, and disregarding all evidence or inferences to the contrary. *Jason L.*, 2000-NMSC-018, ¶¶ 10-11. Ultimately, the propriety of a search or seizure turns on whether it was reasonable, which we review de novo. *Ryon*, 2005-NMSC-005, ¶ 11.

**{12}**     On appeal, Defendant asks that we examine the second *Ryon* prong, arguing "the State failed to meet its burden of proving that [Officer] De La O's primary motivation was a medical emergency, rather than a desire to investigate for drug crimes[,]" and, consequently, the emergency assistance doctrine does not apply.[2] The State argues to the contrary—that substantial evidence supported the district court's decision. We agree with the State. Because we affirm on this basis, we do not address the State's additional preservation or right for any reason arguments.

**{13}**     In this case, police dispatch received a call concerning the well-being of an individual slumped over in a chair in the front yard of a residence who may not have been breathing. Officer De La O responded to that call and observed Defendant unconscious in the yard. Based on her prior experience with Defendant and her knowledge of drug activity at the residence, Officer De La O was concerned that Defendant may be under the influence of narcotics and that he may have overdosed. And because of this, she did not want to simply walk away. Officer De La O instead approached and tried to rouse Defendant, who soon awoke. She was then joined by Officer Gomez, and they both continued to ask Defendant if he was okay to ensure he was "alert and oriented" before they left. This is direct evidence of the officers' motivation, which the district court credited in denying the motion to suppress. *See Yazzie*, 2019-NMSC-008, ¶ 50 (crediting the officer's testimony about why he entered the defendant's home); *see also Schuster v. N.M. Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 27, 283 P.3d 288 (recognizing that when an officer is "conducting a 'welfare check, plain and simple,' then it is logical to infer that he would investigate the incident until he was satisfied that his assistance was not needed"). The foregoing provides substantial evidence that the officers' primary motivation, in approaching and questioning Defendant about his well-being, was to render aid and protect from harm. *See Yazzie*, 2019-NMSC-008, ¶ 50. The officers subsequently were not required to turn a blind eye to criminal activity before them. *See Ryon*, 2005-NMSC-005, ¶ 38; *State v. Nemeth*, 2001-NMCA-029, ¶ 38, 130 N.M. 261, 23 P.3d 936 ("[O]nce the veil of the

---

2Defendant seems to concede the first *Ryon* prong, stating that "an initial interaction to confirm or dispel a medical concern was objectively reasonable[.]" But Defendant in reply suggests officers needed to conduct some "minimal check" to ensure emergency aid was necessary prior to approaching Defendant. In light of the nature of the dispatch (a welfare check) and the concern that Defendant may be experiencing a drug overdose, Defendant's bald assertion that officers should have done something more before approaching him—without discussing "the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished[,]" *Ryon*, 2005-NMSC-005, ¶ 32 (internal quotation marks and citation omitted)—is not well developed, and we decline to consider it further. *See State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts do not review unclear or undeveloped arguments).

home has been legally pierced, we see no need for police officers to turn a blind eye to crime[.]"), *overruled on other grounds by Ryon*, 2005-NMSC-005.

**{14}** Defendant would have us ignore this evidence and, pointing to the same kinds of evidence he relied on below, asks us to draw the contrary inference that the officers were primarily motivated to undertake a criminal investigation. We decline, as we must, Defendant's invitation to reweigh the evidence on appeal. *See State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793 ("[A]s a reviewing court, we do not reweigh the evidence or attempt to draw alternative inferences from the evidence."). We defer to the district court's decision because, as stated, it is supported by substantial evidence. *See Yazzie*, 2019-NMSC-008, ¶ 51; *State v. Garcia*, 2013-NMCA-064, ¶ 48, 302 P.3d 111 ("The question is whether the district court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion." (alteration, internal quotation marks, and citation omitted)). Although Defendant points to evidence that might support an inference contrary to that drawn by the district court, it is "not sufficient to overcome the standard of review in this case." *Yazzie*, 2019-NMSC-008, ¶ 51; *see also Jason L.*, 2000-NMSC-018, ¶¶ 10-11 ("When the evidence conflicts, we consider the evidence that *supports* the district court's ruling[.]" (emphasis added)).

**{15}** Balancing the public need and interest in providing assistance to those who may be in imminent peril from a drug overdose against the intrusion of approaching and inquiring of Defendant's well-being in the front yard of a residence, we conclude the officers acted reasonably as community caretakers in this case. *See Ryon*, 2005-NMSC-005, ¶ 16. The district court's denial of Defendant's motion to suppress is affirmed.

## II.    Double Jeopardy

**{16}** Defendant next contends that his convictions for battery upon a peace officer, contrary to Section 30-22-24, and resisting, evading or obstructing an officer, contrary to Section 30-22-1(B) (fleeing or evading), violate the double jeopardy protection against multiple punishments for the same conduct. Although Defendant did not reserve this issue in his conditional guilty plea, he may nevertheless advance his double jeopardy challenge on appeal. *See State v. Franco,* 2016-NMCA-074, ¶ 8, 387 P.3d 279.

**{17}** "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant raises a "double description" challenge "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In analyzing such challenges, we examine (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to punish the offenses separately. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. Given Defendant's convictions resulted from a no contest plea, the record is thin regarding the facts that gave rise to the two convictions. We, however, need not undertake a unitary conduct analysis here because Defendant "cannot carry the burden imposed by the second prong of the *Swafford* test." *State v. Ramirez*, 2018-NMSC-003, ¶ 42, 409 P.3d

902; *see also State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134 (stating that it is permissible to presume unitary conduct because "our case law separately makes it clear that analysis pursuant to either prong can be dispositive of a *Swafford*-governed double jeopardy challenge").

**{18}** "The sole limitation on multiple punishments is legislative intent[.]" *State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (alteration, internal quotation marks, and citation omitted). "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. When a statute is "vague and unspecific" or "written with many alternatives," however, we apply a modified *Blockburger* analysis, *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024—"look[ing] to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted [and] filling in the case-specific meaning of generic terms in the statute when necessary[,]" *Branch*, 2018-NMCA-031, ¶ 25. We do so "independent of the particular facts of the case . . . by examining the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21 (citation omitted). If, under modified *Blockburger*, "each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Swick*, 2012-NMSC-018, ¶ 13.

**{19}** On appeal, Defendant does not undertake a *Blockburger* analysis, arguing instead that our holding in *State v. Ford*, 2007-NMCA-052, 141 N.M. 512, 157 P.3d 77, compels his fleeing or evading conviction be vacated. In *Ford*, this Court concluded that convictions, based on unitary conduct, for battery upon a peace officer, Section 30-22-24, and resisting or abusing a peace officer, Section 30-22-1(D), violate double jeopardy because resisting or abusing a peace officer is a lesser-included offense of battery upon a peace officer. *Ford*, 2007-NMCA-052, ¶¶ 18-23. *Ford*, however, was specifically limited to Subsection (D) of the resisting, evading or obstructing statute. *Id.* And although Defendant argues that the subsection does not matter for purposes of our double jeopardy analysis, this simply is not the case. Defendant's argument runs contrary to the clear delineation this Court has drawn between Subsection 30-22-1(D), at issue in *Ford*, and Subsection 30-22-1(B), under which Defendant was convicted. *See State v. Jimenez*, 2017-NMCA-039, ¶¶ 24, 37-38, 392 P.3d 668 (distinguishing the conduct at issue under the "resisting or abusing" Subsection (30-22-1(D)) from that at issue under the "fleeing or evading" Subsection (30-22-1(B)), and clarifying that evidence must be evaluated under the particular subsection charged). Moreover, it runs afoul of well-established double jeopardy law that "we treat statutes written in the alternative as *separate statutes* for purposes of the *Blockburger* analysis." *Gutierrez*, 2011-NMSC-024, ¶ 58 (emphasis added) (internal quotation marks and citation omitted). For these reasons, we conclude *Ford* is inapposite.

**{20}** We proceed with the legislative intent analysis demanded by our double jeopardy jurisprudence, examining the relevant statutory provisions in light of the State's theory.

Defendant was charged in Count 3 of battery upon a peace officer, contrary to Section 30-22-24, for the touching or application of force to Officer De La O. Defendant was charged in Count 4 of resisting, evading or obstructing an officer, contrary to Section 30-22-1(B), for the intentional fleeing, evading, or attempted evading of Officer Gomez. The indictment is consistent with the little evidence available in the record as to the State's theory of the charges.

**{21}**    Turning to the applicable statutory provisions, Section 30-22-1(B) requires "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him[.]" Whereas, battery upon a peace officer is "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30-22-24(A). Battery upon a peace officer requires proof that Defendant touched or applied force to an officer, which is not required to prove fleeing or evading an officer. Likewise, Section 30-22-1(B) requires proof that Defendant (1) fled, attempted to evade, or evaded an officer (2) with knowledge that the officer was attempting to apprehend or arrest Defendant, neither of which is required to prove battery upon a peace officer. In light of the State's theory in this case and an examination of the statutory provisions, we conclude that one offense is not subsumed within the other, and *Blockburger* gives rise to a presumption that the Legislature intended the offenses to be separately punished. *See Swick*, 2012-NMSC-018, ¶ 21.

**{22}**    This presumption, however, "is not conclusive and it may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31. To resolve whether this presumption is overcome, "we must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes[,]" and, in particular, we look to the societal interests protected by each statute and the quantum of punishment for the offenses. *Id.* ¶¶ 31-33. Unfortunately, Defendant does not address the additional legislative intent considerations set out in *Swafford*, and so we undertake this analysis without input from him.

**{23}**    First, as for societal interests, our Supreme Court has explained that "[i]f several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." *Id.* ¶ 32. We, however, must take care to "identify the particular evil sought to be addressed by each offense." *Id.* (noting that "the social evils proscribed by different statutes must be construed narrowly"). Here, the applicable statutes protect against different societal harms. One of the purposes of Section 30-22-1(B), which prohibits the "intentionally fleeing, attempting to evade or evading an officer," is to protect the general public from harm that may result from a fleeing suspect. *Cf. State v. Padilla*, 2008-NMSC-006, ¶ 21, 143 N.M. 310, 176 P.3d 299 (concluding that the purpose of the aggravated fleeing statute, NMSA 1978, § 30-22-1.1 (2003), is to protect the general public from the dangers of a high speed chase); *State v. Padilla*, 2006-NMCA-107, ¶¶ 34-35, 140 N.M. 333, 142 P.3d 921 (determining that Section 30-22-1.1 and Section 30-22-1(B) are "kindred" crimes and

that Section 30-22-1(B) is an included offense of Section 30-22-1.1), *rev'd on other grounds*, 2008-NMSC-006. Conversely, the purpose of Section 30-22-24 "is to protect the safety and authority of peace officers." *State v. Padilla*, 1997-NMSC-022, ¶ 5, 123 N.M. 216, 937 P.2d 492 (emphasis omitted). We also consider whether the statutes are usually violated together. *See Swick*, 2012-NMSC-018, ¶ 13. We can envision many ways in which a defendant may flee or evade an officer without committing battery on that officer and the converse is true as well—the two statutes are not necessarily violated together. Thus, our analysis here does not give rise to an inference that "the function of the multiple statutes is only to allow alternative means of prosecution." *Swafford*, 1991-NMSC-043, ¶ 32.

**{24}** Second, we look to the quantum of punishment to detect legislative intent. "Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the [L]egislature did not intend punishment under both statutes." *Id.* ¶ 33. In this case, battery upon a peace officer, Section 30-22-24, is a fourth-degree felony, and fleeing or evading, Section 30-22-1(B), is a misdemeanor. Neither crime, however, is a "base statute" for the other, nor is one "merely an aggravated form of the other." *State v. Fuentes*, 1994-NMCA-158, ¶ 17, 119 N.M. 104, 888 P.2d 986. "The two stand alone, with independent elements and separate policy objectives." *Id.* In sum, consideration of the indicia of legislative intent does not overcome the *Blockburger* presumption that the Legislature intended separate punishment.

**{25}** We therefore conclude that Defendant's convictions for battery upon a peace officer and fleeing or evading do not violate double jeopardy.

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm.

**{27}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**